AUTO CLUB INSURANCE ASSOCIATION v GENERAL MOTORS
CORPORATION

Docket No. 180270. Submitted May 21, 1996, at Detroit. Decided July 19,
1996, at 9:00 A.M.

Auto Club Insurance Association, as subrogee of its insured, Trebur
Property, Incorporated, brought a products liability action in the
36th District Court against General Motors Corporation and Merol-
lis Chevrolet, Incorporated, claiming that a design defect in the fuel
system of a vehicle, manufactured by General Motors and sold by
Merollis to the insured, directly and proximately caused a fire and
damages for which the plaintiff paid the insured. A mediation
panel's recommendation was rejected by the plaintiff and accepted
by the defendants. The defendants then made an offer of judgment,
which the plaintiff did not accept. At the close of the plaintiff's
case during a jury trial, the court, Trudy Duncombe Archer, J.,
granted the defendants' motion for a directed verdict. The court
then denied the defendants' motion for offer of judgment sanctions
and costs. The plaintiff and the defendants appealed, and the
Wayne Circuit Court, Diane M. Hathaway, J., affirmed, agreeing
with the district court's reasoning that sanctions were unavailable
because the directed verdict resulted from a ruling with regard to a
motion. The defendants appealed by leave granted the order
affirming the order denying the offer of judgment sanctions. The
plaintiff cross appealed the order affirming the order granting the
defendants' motion for a directed verdict.

The Court of Appeals *held*:

1. A directed verdict falls within the definition of a "verdict"
under MCR 2.405(A)(4) and is a verdict for purposes of MCR
2.405(A)(4). The trial court erred in denying the defendants offer of
judgment sanctions.

2. Prevailing parties who make offers of judgment and then seek
attorney fees and costs where the claim is not frivolous must rely
on MCR 2.405.

3. A plaintiff bringing a products liability action must show that
the defendant supplied a product that was defective and that the
defect caused the injury. A plaintiff meets this burden where it
demonstrates, by a reasonable probability, that the defect is attrib-

utable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence. The plaintiff is not obligated to eliminate all possible causes of the accident. A court must determine whether it is reasonable to infer from the evidence that the accident was probably caused by the design defect. The causation theory must have some basis in established fact, and is insufficient if it is, at best, just as possible as another theory. The plaintiff must produce substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. Where the cause remains one of pure speculation or conjecture, or the probabilities are evenly balanced, the court must direct a verdict for the defendant. The plaintiff did not meets its burden of proof in this case.

The circuit court's order affirming the district court's order denying costs and attorney fees reversed and remanded; the circuit court's order affirming the grant of a directed verdict affirmed.

1. JUDGMENTS — OFFERS OF JUDGMENT — "VERDICT" — DIRECTED VERDICTS.

A directed verdict of no cause of action falls within the definition of a "verdict" under MCR 2.405(A)(4); a directed verdict granted in response to a motion for a directed verdict is a verdict for purposes of the court rule regarding offers of judgment.

2. JUDGMENTS — OFFERS OF JUDGMENT — COSTS — ATTORNEY FEES.

Prevailing parties who make offers of judgment and then seek attorney fees and costs where the claim is not frivolous must rely on MCR 2.405.

3. PRODUCTS LIABILITY — MOTIONS AND ORDERS — DIRECTED VERDICTS.

A trial court must deny a motion for a directed verdict in a products liability action where the evidence and all available reasonable inferences create a prima facie case of products liability.

4. PRODUCTS LIABILITY — PRIMA FACIE CASE — MOTIONS AND ORDERS — DIRECTED VERDICTS.

A plaintiff bringing a products liability action must show that the defendant supplied a product that was defective and that the defect caused the injury; a plaintiff meets this burden when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence; the plaintiff is not obligated to eliminate all possible causes of the accident; the trial court must determine whether it is reasonable to infer from the circumstantial and direct evidence that the accident probably was caused by the design defect; the plaintiff's causation theory

must have some basis in established fact and is insufficient if it is, at best, just as possible as another theory; the plaintiff must produce substantial evidence that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred; the trial court must direct a verdict for the defendant where the cause remains one of pure speculation or conjecture or the probabilities are evenly balanced.

*Hewson & Van Hellemont, P.C.* (by *James M. Hicks*), for the plaintiff.

*Bowman & Brooke* (by *Peter H. Webster*), for the defendants.

Before: CORRIGAN, P.J., and MACKENZIE and P. J. CLULO,* JJ.

CORRIGAN, P.J. In this products liability action tried in the district court, defendants appeal by leave granted a circuit court order affirming the district court order denying their motion for costs and attorney fees under MCR 2.405. Plaintiff cross appeals the circuit court order affirming the grant of defendants' motion for a directed verdict. We hold as a matter of first impression that offer of judgment sanctions are available under MCR 2.405 where the court directs a verdict of no cause of action. We reverse the order denying costs and attorney fees and remand for further proceedings consistent with this opinion. We affirm the grant of the directed verdict.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

On November 13, 1990, Marie Love, an employee of Trebur Property, Incorporated, drove to work in a Chevrolet S-10 pickup truck owned by Trebur and insured by plaintiff Auto Club Insurance Association.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

As Love drove, a driver nearby gestured that she should pull over. Although Love saw smoke, she thought it was coming from that driver's car. She continued to drive. About fifteen minutes later, a woman banged on the truck window and told Love that the truck was afire. After Love left the truck, she noticed flames coming from the left front of the truck.

Love had purchased the new truck seven months earlier on Trebur's behalf. Aside from an oil change, no maintenance had been performed on the truck, no repairs had been done, and the truck had not been involved in any accidents. Love had, however, experienced a problem with the steering: the truck pulled to the left side. On the day of the fire, Love had trouble steering, and the truck shook.

Damage to the truck totaled $8,008, which plaintiff Auto Club paid to its insured. In June 1991, Auto Club, as subrogee, brought a products liability action against defendants General Motors Corporation and Merollis Chevrolet, claiming that a design defect in the fuel system of the truck directly and proximately caused the fire. In June 1992, a mediation panel released its recommendation. Plaintiff rejected the recommendation and defendants accepted it. Defendants then made an offer of judgment of $1,000, in May 1993, which Auto Club did not accept.

In July 1993, the district court conducted a jury trial. At the close of plaintiff's case, defendants moved for a directed verdict, which the court granted. Defendants later moved for offer of judgment sanctions and costs; the court denied the motion. The district court reasoned that sanctions were unavailable because the directed verdict resulted from a motion. The circuit court agreed with

this reasoning and affirmed the district court's rulings in May 1994. Defendants now appeal by leave granted the circuit court order affirming the district court order denying offer of judgment sanctions; plaintiff cross appeals the circuit court order affirming the district court's decision to grant defendants' directed verdict motion.

## II. ATTORNEY FEES AND COSTS UNDER MCR 2.405, THE OFFER OF JUDGMENT RULE

Defendants first assert that the circuit court erred in affirming the denial of costs and attorney fees under the offer of judgment rule, MCR 2.405. Defendants claim that both the district court and the circuit court erred in interpreting the offer of judgment court rule. The interpretation of court rules is a question of law. *Richmond Twp v Erbes*, 195 Mich App 210, 224; 489 NW2d 504 (1992); *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992). We review questions of law under the de novo standard. *Rapistan Corp v Michaels*, 203 Mich App 301, 306; 511 NW2d 918 (1994).

The purpose of MCR 2.405 is "to encourage settlement and to deter protracted litigation." *Sanders v Monical Machinery Co*, 163 Mich App 689, 692; 415 NW2d 276 (1987). Accordingly, costs under the offer of judgment court rule are awarded as follows:

(D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:

(1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action. [MCR 2.405.]

Under the court rule, an "adjusted verdict" is "the verdict plus interest and costs from the filing of the complaint through the date of the offer." MCR 2.405(A)(5). The court rule defines "verdict" as "the award rendered by a jury or by the court sitting without a jury, excluding all costs and interest." MCR 2.405(A)(4).

The issue presented is whether a directed verdict falls within the definition of a "verdict" under MCR 2.405. The present rule does not specifically identify a directed verdict granted upon a motion as a "verdict." Nonetheless, we conclude that a directed verdict is a verdict for purposes of MCR 2.405(A)(4). In 1991, our Supreme Court grappled with the definition of "verdict" under MCR 2.405 in *Freeman v Consumers Power Co*, 437 Mich 514; 473 NW2d 63 (1991). The trial court had granted the defendants' motion for summary disposition under MCR 2.116, and the defendants asked for costs and fees under MCR 2.405. The plaintiffs contended that a grant of summary disposition did not fall within the definition of a verdict under that court rule. The defendants argued that, because the definition of verdict under MCR 2.403, the mediation court rule, included a judgment on a ruling, the Court should interpret MCR 2.405 as similarly inclusive.

The Court concluded that the definition of a verdict under MCR 2.405 was not interchangeable with that under MCR 2.403. The Court noted that the definitions of verdict in the rules were "precisely worded" and "clear," adding that "there is no sound reason to employ one rule's definition in the application of the other rule." *Freeman*. at 519. The Court also stated that the potential for abuse was greater under MCR 2.405 because, rather than a panel of uninvolved arbi-

trators, the parties themselves formulated the offers to settle. *Id.* at 519, n 8. We note, however, that the trial court has discretion whether to award attorney fees under the offer of judgment rule. MCR 2.405(D)(3).

This Court has also held that a verdict under MCR 2.405 does not include a judgment entered as a result of a ruling on a motion under MCR 2.116. In *Parkhurst Homes, Inc v McLaughlin,* 187 Mich App 357, 364-366; 466 NW2d 404 (1991), this Court decided that the trial court erred in assessing costs after granting a motion for summary disposition. This Court compared MCR 2.405 with MCR 2.403, noting that our Supreme Court had not modified MCR 2.405 to expand the definition of verdict to include judgments entered as a result of rulings on motions as it had in MCR 2.403. This Court stated that if a party decides to reject the mediation evaluation, it does so "with an apparently meaningful understanding of both the merits and potential value of its claim." Under those circumstances, the Court explained, it was not unjust to impose sanctions against a rejecting party. *Id.* at 364-365.

In contrast, offers under MCR 2.405 may be made earlier in the proceedings, even before discovery. Also, the amount of the offer is subject to the discretion of the offeror, unlike mediation. Thus, the potential for abuse is greater, because the offeror could make a minimal offer early in a case with the intention of later securing costs and fees under the court rule. *Parkhurst* at 365. Likewise, in *Zantop Int'l Airlines, Inc v Eastern Airlines,* 200 Mich App 344; 503 NW2d 915 (1993), the trial court defaulted Zantop and dismissed its claims against two of the defendants

because Zantop's counsel had violated a court order in limine restricting a certain line of questioning. *Id.* at 350. This Court, relying on *Parkhurst*, held that no "verdict" under MCR 2.405 had resulted because the case was dismissed after a motion. *Zantop* at 366.

The cited cases are distinguishable from this case. No published case has considered offer of judgment sanctions after the grant of a directed verdict; instead, the authorities have construed dispositive motions under MCR 2.116 and motions for orders of dismissal and defaults as sanctions for attorney misbehavior. A defendant in *Parkhurst* brought a motion for summary disposition just five months after the case commenced. In this case, over two years had passed and the case had proceeded to trial when defendants moved for a directed verdict. Moreover, a motion for summary disposition cannot be equated with a motion for a directed verdict. A motion for a directed verdict is brought after discovery has been conducted, after a jury has been impaneled, and after the plaintiff has presented proofs. Also, a court grants a motion for a directed verdict under a different standard from that of a summary disposition motion. A directed verdict arises under MCR 2.515, while summary disposition occurs under MCR 2.116. In essence, a directed verdict for the defendant technically orders the jury to find no cause of action. A court grants a directed verdict when the evidence does not establish a prima facie case and reasonable persons would agree that there is an essential failure of proof. *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995). Although the standards are similar, a motion for summary disposition is typically made before trial and decided on documentary evidence,

while a directed verdict motion is made at trial on the admitted evidence. *Skinner v Square D Co*, 445 Mich 153, 179; 516 NW2d 475 (1994) (LEVIN, J., dissenting). In this case, the court's act of directing the verdict recognized that no rational jury, as a matter of law, could render a verdict for plaintiff because the evidence was so weak.

Additionally, other statutes and rules are available to prevailing parties, see *Parkhurst, supra;* however, those statutes and rules—MCL 600.2591; MSA 27A.2591; MCR 2.109, 2.114(F), 2.625(A)(1)—do not help these defendants. They permit costs for frivolous claims, an issue not present here. Also, they do not include attorney fees. Therefore, prevailing parties who make offers of judgment and then seek attorney fees and costs where the claim is not frivolous must rely on MCR 2.405.

Further, the Supreme Court Mediation Rule Committee has proposed an amendment of the court rule to include the following definitions of verdict: "(a) a jury verdict, (b) a judgment by the court after a non-jury trial, (c) a judgment entered as a result of a ruling on a motion after rejection of the offer of judgment." See Report of Supreme Court Mediation Rule Committee, December 15, 1995, contained at 451 Mich 1205, 1230-1231. Our Supreme Court has released the committee's report and proposed rule changes for notice and comment. In the commentary on the above proposal, the committee noted that the mediation rule was amended in 1987 to include such a definition of verdict, but the offer of judgment rule was not so amended. The committee wrote "there

was no reason for the two rules to be different on this point." *Id.* at 1231.[1]

We agree with the above commentary. The grant of attorney fees and costs under MCR 2.405 after a directed verdict would avoid situations where each party gambles that it might prevail at trial and thereby evade the rule. See *Hamilton v Becker Orthopedic Appliance Co*, 214 Mich App 593, 594; 543 NW2d 60 (1995). When the purpose of the rule is to encourage the parties to settle before trial, the rule would not be served by withholding costs to the prevailing party after trial has actually commenced and the trial court enters a directed verdict.

Plaintiff contends that this Court should award it sanctions against defendants for bringing a vexatious appeal. Because defendants' appeal raised a meritorious issue, MCR 7.216(C), sanctions are not warranted.

### III. DIRECTED VERDICT ON PRODUCTS LIABILITY CLAIM

On cross appeal, plaintiff argues that the circuit court erred in affirming the district court's grant of defendants' motion for a directed verdict because plaintiff established a prima facie case of products liability. In deciding a motion for a directed verdict, the court examines all the evidence presented up to the time of the motion to determine whether a question of fact exists. *Hatfield v St Mary's Medical*

---

[1] The relationship between mediation and offers of judgment has been controversial. Indeed, the Mediation Rule Committee appointed by our Supreme Court concluded in its report of December 15, 1995, that "the offer of judgment rule undermines the mediation process and that steps should be taken to eliminate that effect." The committee recommended that "MCR 2.405(E) be amended to make offer of judgment sanctions inapplicable to cases that have been mediated, unless the mediation evaluation was not unanimous." See 451 Mich 1206.

*Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995). The testimony and all legitimate inferences that may be drawn from that testimony are viewed in a light most favorable to the nonmoving party. *Id.* In a products liability action, if the evidence and all available reasonable inferences create a prima facie case, the court must deny the motion. *Kupkowski v Avis Ford, Inc*, 395 Mich 155, 160-161; 235 NW2d 324 (1975).

Plaintiff did not establish a prima facie case of products liability. A plaintiff bringing a products liability action must show that the defendant supplied a product that was defective and that the defect caused the injury. *Snider v Bob Thibodeau Ford, Inc*, 42 Mich App 708, 713; 202 NW2d 727 (1972). The plaintiff may establish its case by circumstantial and direct evidence. *Kupkowski, supra* at 166. The plaintiff meets this burden when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence. *Skinner, supra.* The plaintiff, however, is not obliged to eliminate all possible causes of the accident. *Holloway v General Motors Corp (On Rehearing)*, 403 Mich 614, 621; 271 NW2d 777 (1978).

A court must determine whether it is reasonable to infer from the evidence that the accident was probably caused by the design defect. *Id.* at 622. The causation theory must have some basis in established fact, and is insufficient if it is, at best, just as possible as another theory. *Skinner, supra* at 164. The plaintiff must produce substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. *Id.* at 164-165. When the cause

remains one of pure speculation or conjecture, or the probabilities are evenly balanced, the court must direct a verdict for the defendant. *Id.* at 165.

Plaintiff's expert opined that the fire originated within the engine compartment as a result of the truck's defective fuel line. Plaintiff's expert testified, however, that he could not say that the truck was defective in any way. Rather, he reached his opinion regarding the fire's origin by a process of elimination. Love had seen white smoke; the expert said that the cause of the smoke was a gas leak, which sprayed gas oxidized off the exhaust. Plaintiff's expert said that the fire was not caused by an underinflated or flat tire, defendants' causation theory, because Love said that she had not driven on a flat tire. He stated that damage to the wheel rim possibly occurred when the truck was towed.

In contrast, defendants' expert (who was called by plaintiff as an adverse witness) testified that the cause of the fire was Love's continuing to drive on an underinflated or flat tire, which can self-ignite. Defendants' expert testified that the fire was not caused by the fuel system because the burn pattern was inappropriate. Also, if the truck had a fuel leak, Love would have noticed a gasoline odor, puddles of gasoline, and poor fuel economy. Had fire consumed the fuel lines, as plaintiff's expert suggested, Love could not have driven it the additional fifteen minutes after noticing the smoke.

Plaintiff did not establish substantial evidence from which a jury could conclude, more likely than not, that but for defendants' conduct, the truck would not have burned. Plaintiff's expert stated that he could not say that the truck was defective in any way. Plain-

tiff's expert did not demonstrate a causal connection between a design defect and the fire. Because the probabilities of plaintiff's and defendants' theories were evenly balanced, any conclusion from the jury would have been pure speculation or conjecture. Plaintiff's expert did not demonstrate by a reasonable probability that a defect in the fuel line, which would be attributable to defendants, was more probable than any other theory of the fire's cause.

Reversed and remanded as to the order denying costs and attorney fees; the order affirming the grant of the directed verdict is affirmed. We do not retain jurisdiction.