MASB-SEG PROPERTY/CASUALTY POOL, INC v METALUX

Docket No. 198036. Submitted May 13, 1998, at Detroit. Decided August 28, 1998, at 9:00 A.M. Leave to appeal sought.

MASB-SEG Property/Casualty Pool, Inc., as subrogee of the Calhoun County Area Technology Center, brought a products liability action in the Calhoun Circuit Court against Metalux, a division of Cooper Industries, Inc., and Medler Electric Company, alleging negligence and breach of Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, implied warranties with respect to a light fixture made by Metalux and sold by Medler that the plaintiff claimed was defective and caused a fire at the technology center. The court, James C. Kingsley, J., denied the defendants' motion for summary disposition, limited the scope of the testimony of the plaintiff's experts to forbid testimony about physical evidence not preserved by the plaintiff, and, at the close of the plaintiff's proofs at a jury trial, directed a verdict of no cause of action. The plaintiff appealed, and the defendants cross appealed.

The Court of Appeals *held*:

1. The trial court erred in directing a verdict of no cause of action. Viewing the evidence presented up to the time of the motion for a directed verdict in the light most favorable to the plaintiff, the trier of fact could have concluded that the defendants had supplied a product that was defective and that the defect caused the plaintiff injury.

2. The trial court did not abuse its discretion in limiting the scope of the plaintiff's experts' testimony and in denying the defendants' motion for summary disposition based on the plaintiff's failure to preserve evidence. That failure prejudiced the defendants by depriving them of the opportunity to investigate alternative causes of the fire so as to warrant limiting the testimony of the plaintiff's experts, but not the dismissal of the plaintiff's action.

3. The trial court erred in denying the defendants' motion for summary disposition of the negligence claim. The plaintiff seeks to recover for economic loss caused by a defective product purchased for a commercial purpose. Accordingly, pursuant to the economic loss doctrine, the plaintiff's exclusive remedy is provided by the UCC.

4. The trial court did not err in denying the defendants' motion for summary disposition of the plaintiff's UCC claims, a motion based on the asserted ground that the plaintiff was required by MCL 440.2607(3)(a); MSA 19.2607(3)(a) to provide reasonable notice of the asserted breach of warranties and failed to do so. The plaintiff acted in good faith and notified the defendants of the alleged breach within a reasonable time of discovering the identity of the manufacturer of the light fixture.

Affirmed in part, reversed in part, and remanded for a new trial with regard to the claim of breach of warranties.

1. MOTIONS AND ORDERS — DIRECTED VERDICTS — APPEAL.

The Court of Appeals, in reviewing a trial court's decision regarding a motion for a directed verdict, views the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, grants that party every reasonable inference, and resolves any conflict in that party's favor to decide whether a question of fact existed.

2. NEGLIGENCE — PRODUCTS LIABILITY — PLAINTIFFS' BURDEN OF PROOF.

A plaintiff bringing a products liability action, under either a negligence or a warranty theory, must show that the defendant supplied a product that was defective and that the defect caused the injury; a plaintiff meets its burden when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence.

3. EVIDENCE — PARTIES' FAILURE TO PRESERVE EVIDENCE — SANCTIONS.

A trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation has commenced; an appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence; dismissal of the action is a drastic sanction that should not be imposed before lesser sanctions have been considered.

4. SALES — UNIFORM COMMERCIAL CODE — ECONOMIC LOSS.

A plaintiff seeking to recover for economic loss caused by a defective product purchased for commercial purposes is limited to the exclusive remedy provided by the Uniform Commercial Code (MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*).

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Thomas M. Slavin*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *B. I. Stanczyk*), for the defendants.

Before: HOOD, P.J., and MACKENZIE and DOCTOROFF, JJ.

DOCTOROFF, J. Plaintiff appeals as of right the directed verdict in favor of defendants and the trial court's limitation of the scope of plaintiff's expert testimony. Defendants cross appeal the trial court's denial of their motion for summary disposition of plaintiff's Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, claim and the denial of their motion to dismiss plaintiff's claim on the ground that plaintiff failed to preserve all relevant evidence. We affirm the trial court's limitation of the scope of plaintiff's expert testimony and its denial of defendants' motions to dismiss plaintiff's UCC claim. We reverse the trial court's grant of a directed verdict in favor of defendants, and we remand for a new trial with regard to plaintiff's UCC claim.

This is a products liability action brought by plaintiff MASB-SEG Property/Casualty Pool, Inc., as subrogee of the Calhoun County Area Technology Center, which arose out of a fire that occurred in the "tool crib" of the technology center on December 3, 1993. Plaintiff alleged that the fire was caused by a defective fluorescent light that was manufactured by Metalux, a division of Cooper Industries, Inc., and sold to Medler Electric Company, from whom the technical center bought the fixture.

The tool crib was an area within the construction technology lab where power tools and other equipment were stored under padlock for security purposes. It encompassed approximately two hundred square feet in the middle of the large open room where students completed their construction projects, and it was constructed of studs with wire mesh sides and a door that was latched with a safety lock. The tool crib was equipped with eight-foot-long fluorescent lighting fixtures located at the top of the bay area, and it was not equipped with a sprinkler system. The lights in the crib were installed by electrical program students.

Frederick Kempski, a fire investigator for the Michigan State Police and an expert witness for plaintiff, testified that he was called to investigate the fire at the school. Kempski testified that, from the heat distortion on the electrical metal jig that he found on the floor, he believed it could have been an accidental cause of the fire if it had been energized or plugged in. He also testified that there was more burning high in the crib than lower toward the ground, which is indicative of an accidental fire. He testified that in the northwest area of the crib, virtually everything that could burn was burned to ash. This is consistent with the fact that a fire burns hotter and longer in the area of origin of the fire, so there will be more damage in that area. Kempski ruled out spontaneous combustion as a possible cause. Additionally, in one photograph he identified an electrical conduit that was in the same area at ceiling height, but stated that it did not appear to be the origin or cause of the fire. He testified that the origin of the fire was in the west end of the tool crib at the ceiling level of the crib and just

below the floor level of the loft area. He stated that the only thing in the area of the origin of the fire that could have served as an ignition source was the fluorescent light.

Dan Jones, an independent fire investigator who was called to the scene of the fire, testified that he examined the exterior of the building and then entered the building through the front door and began his investigation. He testified that from the smoke staining that had occurred, he determined that the origin of the fire was inside the building. Jones determined that the electrical system was in normal operating condition, and there were no breakers tripped and no indication that there was any problem with the internal disconnects of the electrical system. The heating units and boilers were operating normally, and there was no indication that they were a possible cause of the fire. By working his way from areas with the least fire damage to those with the most, Jones narrowed the area to the tool crib. He further testified that the padlock that secures the door to the tool crib was still in place and locked. He observed several two-by-fours that were part of the structure at the west end of the tool crib and noted that the charring on them indicated that the fire was in the west end. Jones also testified that the magnesium float, of which remains were found in the tool crib, did not cause the fire. He examined the electrical outlets in the west end of the tool crib to determine whether something might have been plugged into the receptacles, and he found that there was no indication that the receptacles might have caused the fire. He also stated that there was no indication of any internal

arcing, sparking, or holes on the inside of the receptacles.

Norman Reese testified for plaintiff as an expert in a limited capacity as an electrical engineer. He testified that at Jones' request he inspected the ballast that was attached to the light fixture that was removed from the tool crib. He testified that the capacitor in the light fixture was melted into a solid block and that it had completely lost its form and was unrecognizable as a capacitor. He stated that there is virtually no way to test the capacitor once it takes on this form, because as soon as the short circuit occurs, the two plates melt together and are completely destroyed. Reese testified that, judging from the burn patterns on the fixture itself from the base of the ballast, the melted form of the capacitor, the position of the capacitor on the ballast, and the tar running beneath the ballast, which indicated that it was heat from above that caused the melted capacitor, it was his opinion that the capacitor had failed.

Before cross-examining Reese, defendants moved for a directed verdict. After hearing testimony from defense experts outside the presence of the jury, the trial court granted the motion.

Plaintiff first argues that the trial court erred in directing a verdict in favor of defendants, because plaintiff presented evidence that a defect existed at the time the product left the manufacturer. We agree. In reviewing a trial court's decision regarding a motion for a directed verdict, this Court views the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, grants that party every reasonable inference, and resolves any conflict in the evidence in that party's

favor to decide whether a question of fact existed. *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995).

A plaintiff bringing a products liability action, under either a negligence or a warranty theory, must show that the defendant supplied a product that was defective and that the defect caused the injury. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415; 443 NW2d 340 (1989); *Auto Club Ins Ass'n v General Motors Corp*, 217 Mich App 594, 604; 552 NW2d 523 (1996). The plaintiff may establish its case by circumstantial and direct evidence. *Id.* A plaintiff meets its burden when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence. *Id.* The plaintiff is not required to eliminate all possible causes of the accident. *Id.* It is enough that the plaintiff establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support. *Mulholland, supra* at 415.

We find that, viewing the evidence in a light most favorable to the plaintiff, a trier of fact could have concluded that defendants supplied a product that was defective and that the defect caused the plaintiff injury. Plaintiff's expert, Norman Reese, testified that, on the basis of the burn pattern he examined on the fixture itself and on the base of the ballast, he concluded that the capacitor on the ballast failed. Frederick Kempski testified that the origin of the fire was in the west end of the tool crib, at the ceiling level of the crib and just below the floor level of the loft area.

He testified that the only possible ignition source in this area was the fluorescent light. On the basis of this evidence, we find that the trial court erred in directing a verdict in favor of defendants.

Plaintiff next argues that the trial court erred in limiting the scope of plaintiff's experts' testimony on the ground that plaintiff failed to preserve evidence. Plaintiff relies on the fact that the allegedly defective product, the light fixture, was preserved and available for inspection by defendants and that defendants demonstrated no prejudice as a result of plaintiff's failure to preserve other evidence from the fire scene. Defendants argue on cross appeal that the trial court abused its discretion in denying their motion to dismiss plaintiff's claim on the ground that plaintiff failed to preserve all relevant evidence other than the light fixture itself.

A trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation has commenced. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion. *Id.*

> [I]n a case involving the failure of a party to preserve evidence, a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence. An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence. [*Id.* at 161 (citations omitted).]

Dismissal of a case is a drastic step. Before imposing such a sanction, the trial court must consider lesser sanctions such as the exclusion of evidence that is unfairly prejudicial to defendants because of plaintiff's failure to preserve the evidence. *Id.* at 163.

We find that the sanction imposed by the trial court was appropriate under the circumstances of this case. Plaintiff's failure to preserve evidence from the fire scene prejudiced defendants by depriving them of the opportunity to investigate alternative causes for the fire. Therefore, the trial court properly excluded expert testimony regarding evidence that was not preserved. *Hamann v Ridge Tool Co*, 213 Mich App 252, 258; 539 NW2d 753 (1995). Contrary to defendants' contention, however, we do not believe that the drastic sanction of dismissal of plaintiff's claim was warranted in this case. See *Brenner, supra* at 163. Therefore, the trial court did not abuse its discretion in limiting plaintiff's expert testimony to that which could be derived only from physical evidence and photographs to which defendants had equal access.

Defendants next argue on cross appeal that the trial court erred in denying their motion for summary disposition after concluding that the economic loss doctrine applies in this case. We agree. The economic loss doctrine provides that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC. *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 527-528; 486 NW2d 612 (1992). The Court in *Neibarger* reasoned that the UCC provides remedies sufficient to compensate the buyer of a defective product for direct, incidental, and consequential losses, including damage to prop-

erty other than the defective product itself, where the damage was within the contemplation of the parties to the agreement and the occurrence of the damage could have been the subject of negotiations between the parties. *Id.* at 532. Interpreting *Neibarger*, the United States Court of Appeals for the Sixth Circuit stated that the economic loss doctrine "focuses our inquiry not so much on the magnitude or extent of the damage as on the parties involved and the nature of the product's use." *Detroit Edison Co v NABCO, Inc*, 35 F3d 236, 242 (CA 6, 1994).

Here, the purchaser of the light fixture was a commercial entity, an industrial school, and the seller was a retailer for the original manufacturer. Thus, both parties were sophisticated commercial entities who had the knowledge and ability to allocate liability in their purchase and sale agreement. Furthermore, the light fixture was for a commercial purpose, in that it was installed as a student project in the tool crib at the industrial training school and used for the purpose of maintaining the school premises. Therefore, because the consequences of the product's potential failure were likely to have been within the contemplation of the parties when they entered into the agreement for the sale of the light fixture, the economic loss doctrine applies. Therefore, plaintiff's exclusive remedy is provided by the UCC, *Neibarger*, *supra* at 538, and its products liability claim should have been dismissed.

Plaintiff relies on *Detroit Bd of Ed v Celotex Corp (On Remand)*, 196 Mich App 694; 493 NW2d 513 (1992), in arguing that, because defendants' product posed an unreasonable risk of harm or injury, the economic loss doctrine does not apply. We disagree

with plaintiff's reading of *Celotex* as providing a general exception to the economic loss doctrine where a product poses an unreasonable risk of harm or injury. In *Celotex*, the plaintiffs were a class of several hundred public school districts and private schools and the defendants were manufacturers, distributors, or installers of asbestos products that were used in the plaintiffs' school buildings. *Id.* at 698. This Court declined to apply the economic loss doctrine, stating:

> In the present case, plaintiffs do not allege that defendants' products were inferior in quality or did not work for their intended purpose. They do not claim any injury to the products themselves. Rather, they claim that defendants' products are safety hazards that have created a potential health threat and caused them to suffer damages in abating the hazard. We also observe that it is highly unlikely that the parties could have anticipated and bargained over the hazards of asbestos at the time the products were sold, which was apparently years before the risks of the material were known. In short, the risk involved here is not the type that is allocated to a party through negotiation. [*Id.* at 704-705.]

This Court's decision in *Celotex* was not based strictly on the fact that the product was a safety hazard, but rather on the fact that the specific type of danger posed by the product could not have been in the contemplation of the parties at the time they entered into their sales agreement. In contrast, the potential failure of the capacitor within the light fixture in the present case, and the damage caused by the resulting fire, were direct and consequential losses that were within the contemplation of the parties when they entered into the agreement for the sale of the light fixture. Therefore, plaintiff's only remedy is through the UCC, and the trial court erred in failing to grant

summary disposition in favor of defendants with regard to plaintiff's tort claim.

Defendants next argue that the trial court erred in denying their motion for summary disposition of plaintiff's UCC claim because plaintiff was required by MCL 440.2607(3)(a); MSA 19.2607(3)(a) to provide reasonable notice of the asserted breach of warranties and failed to do so. We disagree.

Defendants argue that plaintiff determined by early January 1995 that the capacitor of the light fixture had failed, but did not notify defendants until May. Plaintiff claims that it did not determine that defendant Metalux was the manufacturer of the product until April and that it notified defendants within a few weeks. It appears to this Court that plaintiff acted in good faith and notified defendants of the alleged breach of warranties within a reasonable time after discovering the identity of the manufacturer of the light fixture. Therefore, plaintiff's UCC claim is not barred.

Affirmed in part, reversed in part, and remanded for a new trial with regard to plaintiff's claim of breach of warranties under the UCC. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full. We do not retain jurisdiction.