**ROSKAM BAKING COMPANY,**
Plaintiff/Counter–
Defendant,

v.

**LANHAM MACHINERY COMPANY, INC., APV Consolidated, Inc., APV Baker Company, Inc., Defendants/Counter–Plaintiffs.**

No. 1:97–CV–213.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 29, 1999.

Miles J. Murphy, III, Flickinger & Plachta, PC, Grand Rapids, MI, Michael J. Izzo, Jr., Robert M. Caplan, Cozen & O'Connor, Philadelphia, PA, for Roskam Baking Company.

Mark H. Verwys, Plunkett & Cooney, PC, Grand Rapids, MI, for Lanham Machinery Company, Inc., APV Consolidated, Inc., APV Baker Company, Inc.

## OPINION

QUIST, District Judge.

Plaintiff, Roskam Baking Company ("Roskam"), has sued Defendants, Lanham Machinery Company, Inc., APV Consolidated, Inc., and APV Baker Company, Inc. (collectively "APV" or "Defendants"), alleging breach of contract and negligence. This matter is before the Court on Defendants' Motion for Evidentiary Sanctions. The Court has heard testimony and oral arguments, and has thoroughly studied the evidence.

### Facts

On July 21, 1987, Roskam entered into a written contract with APV for the purchase of an oven for its Butterworth commercial baking facility in Grand Rapids, Michigan, to replace an older model APV oven at the facility. (*See* 7/15/87 Proposal, Defs.' Br.Supp.Mot.Summ.J. re Breach of Contract & Negligence Ex. A.)

On March 1, 1996, a fire destroyed the Butterworth facility. How the fire was started is disputed. Two Roskam employees have testified that they saw the fire on the ceiling right above or near the oven's draft hood. (*See* Dennis Vachon Dep. at 138–39, Def.'s Mot. for Evid. Sanctions, Ex. 6; Andrew Smith Dep. at 43–45, Pl.'s Resp.Mot.Summ.J. re Spoliation of Evidence Ex. B.) Roskam's proposed experts on causation have opined that the proximity of the oven's draft hood to the wooden roof rafters caused the fire. (*See* Greve Report at 5, Pl.'s Resp.Mot.Summ.J. re Breach of Contract & Negligence Ex. D.; Pello Report at 5, Pl.'s Resp.Mot.Summ.J. re Breach of Contract & Negligence Ex. M.; Hoffman Report at § IV.3, Defs.' Br. Supp.Mot.Summ.J. re Breach of Contract & Negligence Ex. N.) Roskam's proposed experts on causation include Donald J. Hoffman ("Hoffman"), who directed Roskam's efforts to document and collect physical evidence from the fire scene as well as Roskam's investigation of the fire scene. The City of Grand Rapids Fire Inspector, Pablo Martinez, also investigated the cause and origin of the fire and testified in his deposition that prolonged exposure to the oven's operating temperature caused the wooden rafters to dry out and deteriorate to the point of ignition. (Martinez Dep. at 59, Pl.'s Resp. Mot.Summ.J. re Spoliation of Evidence Ex. C.)

APV responds that it is impossible to tell how the fire started because Roskam razed the facility on April 4, 1996, before APV was given the opportunity to examine the fire scene. Larry West, the fire scene investigator for The Maryland Insurance Group ("Maryland"), Roskam's insurer and subrogee in this action, was notified of the fire the evening of March 1, 1996, and came to Grand Rapids to investigate. (*See* West Dep. at 73, Defs.' Attachs. Supp.Mot. Summ.J. re Spoliation of Evidence Ex. B.) Upon learning of the fire, West called Maryland/Roskam's counsel's law firm as well as Hoffman. (*See id.* at 73–74.) Hoffman arrived on the scene the afternoon of March 2, 1996, and Michael Izzo, counsel for Maryland/Roskam in this case, arrived

on the scene March 4, 1996. (*See id.* at 76.)

West incorrectly believed that by approximately March 6, 1996, Izzo had contacted APV. (*See id.* at 133). Hoffman testified during his deposition that he discussed with West whether APV should be contacted and that "West had indicated that he had communicated to somebody that they should notify the oven manufacturer, and I agreed with him." (Hoffman Dep. at 173, Defs.' Attachs. Supp.Mot. Summ.J. re Spoliation of Evidence Ex. E.) Martinez also testified, in his deposition, that, in hindsight, someone from APV should have been at the scene because APV could "better explain the operation of the oven for us." (Martinez Dep. at 237, Defs.' Reply Mot.Summ.J. re Spoliation of Evidence Ex. 4.)

Roskam razed the Butterworth facility on April 4, 1996. Gary Bledsoe of APV learned about the fire while in Chicago, and Bledsoe visited the Butterworth facility on March 7, 1996, prior to the razing, in connection with Roskam's request for a price to replace its oven and related equipment. (5/7/98 Bledsoe Dep. at 73, Defs.' Reply Mot.Summ.J. re Spoliation of Evidence Ex. 26.) Bledsoe testified that he was told by Roskam during his visit that the fire "started in the area of the oven." (9/23/98 Bledsoe Dep. at 315, Defs.' Reply Mot.Summ.J. re Spoliation of Evidence Ex. 27.) Bledsoe relayed that information to APV's home office. (*See id.* at 315–16.) However, APV states that it did not learn that the oven was in fact a suspected cause of the fire until June 17, 1996, when it received a demand for reimbursement of workers compensation payments made as the result of Jacqueline Medina, a Roskam employee who died in the fire. At this time, APV demanded that the fire scene be preserved for inspection by APV. (*See* 6/17/96 Letter from Martin to Villarreal, Defs.' Attachs. Supp.Mot.Summ.J. re Spoliation of Evidence Ex. M.) By that time, however, the fire scene had been razed.

APV's expert, John Mertens, testified at the hearing on APV's motion that he is unable to conduct a complete investigation because all of the evidence that he would like to examine is not available. Roskam asserts that it preserved all of the relevant evidence not destroyed in the fire. However, Mertens has testified that specific items, which he believes are relevant, were not preserved: 1) the depanner exhaust stacks; 2) a missing lamp socket from the immediate area where the fire was observed; 3) the pan misalignment sensor; 4) a pile of debris adjacent to the oven; 5) various fluorescent light ballasts; and 6) various internal oven parts. (*See* Def.'s Supp.Br. re Mot. for Evid. Sanctions at 10–11.)

Mertens testified at the hearing on APV's motion that his investigation of the evidence was compromised because various measurements were taken inaccurately or generated based on scaled photographs of the trusses, including measurements of: 1) support trusses; 2) nailing plates; and 3) oven curtains. Mertens suggests that these inaccurate, or potentially inaccurate, measurements impair his ability to present expert opinions regarding the potential causes of the fire with a reasonable degree of engineering certainty.

At the hearing Roskam contended that its expert, Hoffman, thoroughly investigated the scene. Roskam submits that Hoffman collected all of the pertinent physical evidence that was not destroyed by the fire and took pictures to document all relevant physical evidence that was not saved, as well as the fire scene. This evidence was delivered to or otherwise made available to APV.

### Analysis

APV argues that evidentiary sanctions are appropriate against Roskam because of Roskam's destruction of critical evidence, namely, the razing of the fire scene prior to the time APV was notified that it was potentially responsible for the fire. Roskam responds that its failure to notify APV was accidental and did not unduly prejudice APV.

The Sixth Circuit has held that "[t]he rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law," in this case, Michigan. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir.1999); *see also Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988). Under Michigan law, "[a] trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation is commenced." *Masb–Seg Prop./Cas. Pool, Inc. v. Metalux*, 231 Mich.App. 393, 400, 586 N.W.2d 549, 553 (1998) (citing *Brenner v. Kolk*, 226 Mich.App. 149, 159–60, 573 N.W.2d 65, 70 (1997)). A sanction may be appropriate "regardless of whether the evidence is lost as the result of a deliberate act or simple negligence, [as] the other party is unfairly prejudiced because it is unable to challenge or respond to the evidence . . . ." *Brenner*, 226 Mich. App. at 160, 573 N.W.2d at 70. The imposition of a sanction for spoliation of evidence is a matter within the discretion of the trial judge. *See Masb–Seg*, 231 Mich. App. at 400, 586 N.W.2d at 553; *Brenner*, 226 Mich.App. at 160, 573 N.W.2d at 70.

The court in *Brenner* explained that the trial judge should:

> carefully fashion[ ] a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence. An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence.

*Brenner*, 226 Mich.App. at 161, 573 N.W.2d at 70 (citation omitted).

*Masb–Seg* is particularly applicable to this case. In *Masb–Seg*, the plaintiff alleged that a light manufactured by the defendant caused a fire at the plaintiff's building. The plaintiff failed to preserve the fire scene before suing the defendant. The fire scene was investigated both by the plaintiff's hired expert and an independent fire investigator, but was destroyed before the defendant's experts had a chance to investigate the scene. The plaintiff preserved all evidence that it believed was relevant to the cause of the fire but did not preserve other evidence that the defendant's expert indicated would be relevant to ruling out alternate causes of the fire. The court held that:

> Plaintiff's failure to preserve evidence from the fire scene prejudiced defendants by depriving them of the opportunity to investigate alternative causes for the fire. Therefore, the trial court properly excluded expert testimony regarding evidence that was not preserved.

*Masb–Seg*, 231 Mich.App. at 401, 586 N.W.2d at 553 (citation omitted). APV points out that in *Masb–Seg*, the Court limited plaintiff's expert to opinion, "derived only from physical evidence *and* photographs to which the defendants had equal access." *Id.* at 401, 586 N.W.2d at 553 (emphasis added by APV). However, the Court believes that APV improperly reads the quotation. In *Masb–Seg*, the Court limited experts to opinions derived from any of the preserved evidence, either physical or photographic. *See id.* at 401, 586 N.W.2d at 553 (holding that "the trial court properly excluded expert testimony regarding evidence that was not preserved," without distinguishing between physical and photographic evidence).

As stated above, Mertens contends that he was unable to conduct a complete analysis and thereby form opinions based on the evidence collected and catalogued by Hoffman. However, during the hearing Mertens was adept at questioning the credibility and veracity of Hoffman's theories and arguments. Mertens effectively raised the issues of improper measurements made by Hoffman, conflicting eyewitness testimony putting the fire starting south of the oven, and the lack of gathering certain items of physical evidence. In particular, Mertens contended that Hoffman should have kept various internal oven mechanisms, items

from the depanner area, including the exhaust stacks and misalignment sensor, and various light fixtures alleged to be in the general area where the fire started. Mertens ability to discredit and call into question both Hoffman's fire scene investigation and his analysis remove considerable prejudice from APV.

Mertens also had sufficient evidence to reconstruct the scene of the fire, generate theories as to alternate causes, and rule out some possible alternate causes. For example, Mertens ruled out the fluorescent light fixtures as a cause of the fire, though he did note that an incandescent light fixture, which cannot be positively located, might have started the fire. Mertens was also able to rule out the depanner as a potential cause based on the fact that the depanner had not been running for some time prior to the fire. While measurements taken from scaled photographs are not perfect, they appear to have given Mertens sufficient precision to reconstruct dimensions of various trusses and elements of the factory.

█ Based on Mertens' testimony at the evidentiary hearing, this Court concludes that, with a proper jury instruction if necessary, APV can present an effective response to Roskam's theory of causation. Based on the physical evidence preserved by Hoffman and the photographic evidence, Mertens is able to both develop his own theories regarding possible causes of the fire and call into question the theories put forth by Roskam's experts. As a result, barring Roskam's proposed expert opinions is not necessary to prevent prejudice against APV.[1]

If it appears during trial that APV's experts are unable to answer questions or generate opinions because they need information destroyed by Roskam, this Court will instruct the jury that it may draw an inference adverse to Roskam from the absence of evidence based on Roskam's spoliation of the evidence. In this Court's judgment, this instruction will prevent APV from being prejudiced.

APV argues that the above instruction is not sufficient to avoid prejudice, citing *Fire Insurance Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911 (Nev. 1987), for the proposition that any adverse presumption ordered by the court as a sanction for spoliation of evidence will not be able to overcome the power of expert testimony. *Id.* at 652, 747 P.2d at 914. However, in *Zenith* the plaintiffs had completely destroyed the relevant evidence before allowing the defendant's experts to examine it. Roskam preserved physical evidence and took extensive photographs of the site. Therefore, the case before this Court is distinguishable from *Zenith*. While a jury instruction allowing an adverse presumption might not have been beneficial in *Zenith*, such an instruction will be a sufficient remedy in the present case.

### *Conclusion*

For the foregoing reasons, APV'S motion for evidentiary sanctions will be granted in part. Roskam may introduce its expert opinions. However, if it appears during trial that APV's experts are unable to answer questions or generate opinions because they need information destroyed by Roskam, this Court will instruct the jury that it may draw an inference adverse to Roskam from the absence of evidence based on Roskam's spoliation of the evidence. The Court will hear the parties on the exact wording of the instruction.

---

1. APV suggests that this Court limit Roskam to testimony consistent with statements made by Dennis Vachon ("Vachon"), an eyewitness, that the fire started in the flat, low part of the ceiling. (Def.'s Suppl.Br. re Mot. for Evid. Sanctions, at 15.) However, in Vachon's deposition testimony, he was unable to exactly place the start of the fire, stating only that it was between the oven drive and the hood. (Vachon Dep. at 138, Def.'s Br. re Mot. for Evid. Sanctions Ex. 6.) Therefore, this sanction would be inappropriate.