# STATE OF MICHIGAN

# COURT OF APPEALS

TERRY TUCK, Guardian of MICHAEL D. TUCK,

        Plaintiff-Appellee,

v

WIXOM SMOKERS SHOP, SALAM PETRO, LEO BRIKHO, and LEO AND SAM, INC.,

        Defendants-Appellants,

and

JOHN DOE DISTRIBUTORS and JOHN DOE MANUFACTURERS,

        Defendants.

UNPUBLISHED
March 16, 2017

No. 330784
Oakland Circuit Court
LC No. 2014-139444-NO

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendants-appellants, Wixom Smokers Shop, Salam Petro, Leo Brikho, and Leo and Sam, Inc. ("defendants"), appeal by leave granted from the trial court's order denying their motion for summary disposition under MCR 2.116(C)(10) in this product-liability action brought by plaintiff Terry Tuck as guardian of his son Michael D. Tuck. We reverse and remand for entry of summary disposition in favor of defendants.

Plaintiff alleges that Michael started acting erratically, experienced hallucinations, and displayed severe episodes of paranoia after ingesting a product known as "spice" or "K2," also known as synthetic marijuana, on June 3, 2011. Within days of using the substance, Michael threatened to shoot a mail carrier and a newspaper-delivery person for coming to the home. Approximately five days after ingesting the spice, Michael burned down the family home. Criminal charges against him were resolved by a plea of not guilty by reason of insanity.

Plaintiff filed this product-liability action against defendants, as the alleged sellers of the product that caused Michael's mental injury and breakdown. Michael was never deposed, apparently because of continuing physical and mental health issues. Instead, plaintiff relied on

-1-

Michael's friend, Jared Alcorn, to establish defendants' identity as the sellers of the product that caused Michael's injury. Alcorn testified that on June 3, 2011, he and Michael drove to defendants' business establishment to purchase spice. However, Alcorn did not accompany Michael into the store and did not know what specific product Michael purchased. Alcorn admitted that Michael sometimes purchased spice from other locations.

After leaving defendants' store, Alcorn and Michael went to the home of another friend, Brian Lowe, to ride dirt bikes. During the evening, Michael and several others who were there consumed the spice that Michael brought, and another person also supplied some spice that was shared with the group. Alcorn did not know where that other person purchased the spice that he brought. According to Alcorn, the group smoked between seven and nine blunts of spice, but Alcorn denied being part of that group. Alcorn knew that Michael used other drugs, including Vicodin and Xanax, as well as alcohol. Alcorn did not think Michael consumed any alcohol that evening, but did not know if Michael consumed any other drugs besides the spice. According to Alcorn, Michael did not have any spice left when he and Alcorn left Lowe's home.

Later that evening, Michael suffered from delusions and became extremely paranoid. None of the other individuals at Lowe's home experienced issues similar to those experienced by Michael. The next day, Michael showed Alcorn and Lowe some guns and said he would use them "for when they come." Michael kept a loaded gun hidden next to his bed and accused Lowe of stealing a four-wheeler from plaintiff. On June 9, 2011, Michael burned down the family home. There is no indication that Michael was monitored or closely observed between his consumption of the spice on June 3 and the fire on June 9.

Plaintiff filed this product-liability action against defendants, raising claims for breach of express and implied warranties; (2) negligence/gross negligence/strict liability; and (3) violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. Defendants moved for summary disposition under MCR 2.116(C)(10), alleging, among other things, that plaintiff could not prove causation. They claimed that Alcorn could not identify what product, if any, Michael purchased from defendants' store on June 3, and they further claimed that even if Michael did purchase spice from their store, plaintiff could not prove that Michael's breakdown was caused by that specific product. Plaintiff argued that there were disputed issues of fact regarding causation that precluded summary disposition. The trial court agreed and denied defendants' motion. This Court granted defendants' application for leave to appeal.

We review de novo a trial court's decision to grant or deny summary disposition. *Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014); *Castro v Goulet*, 312 Mich App 1, 3; 877 NW2d 161 (2015). Plaintiff moved for summary disposition under MCR 2.116(C)(10), which tests the factual support for a claim. A reviewing court must examine the evidence submitted by the parties, viewing that evidence in the light most favorable to the nonmoving party. *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014). Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. Speculation and conjecture cannot be used to create a genuine issue of material fact. *Meemic Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011).

A "product liability action" is defined as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." MCL 600.2945(h). A plaintiff raising a product-liability action may proceed under either a negligence or warranty theory, but must demonstrate that the defendant supplied a product that was defective and that the defect was the cause of the injury. *MASB-SEG Prop/Cas Pool, Inc v Metalux*, 231 Mich App 393, 399; 586 NW2d 549 (1998). A seller cannot be liable for harm allegedly caused by a product unless the seller failed to exercise reasonable care with respect to the product and the failure was a proximate cause of the person's injuries, or the seller made an express warranty regarding the product, the product did not conform, and the lack of warranty conformance was the proximate cause of the person's harm. MCL 600.2947(6).

All of plaintiff's claims are dependent upon plaintiff proving that Michael's mental breakdown and injuries were caused by his consumption of spice purchased from defendants' store.[1] That is, plaintiff must show that defendants supplied the product that caused Michael's injury. Although the element of causation may be supported by circumstantial evidence, such evidence "must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). As the Michigan Supreme Court explained in *Skinner*:

> In *Kaminski* v *Grand Trunk W R Co,* 347 Mich 417, 422; 79 NW2d 899 (1956), this Court highlighted the basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof:
>
>> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.
>
> We want to make clear what it means to provide circumstantial evidence that permits a reasonable inference of causation. As *Kaminski* explains, at a minimum, a causation theory must have some basis in established fact. However,

---

[1] We disagree with plaintiff's argument that defendants abandoned any challenge to the MCPA claim because they did not request dismissal of that claim in the trial court. A review of defendants' motion for summary disposition and brief in support of that motion reveals that defendants sought dismissal of all of plaintiff's "claims."

a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. [*Skinner*, 445 Mich at 164-165.]

In this case, even assuming that plaintiff presented sufficient circumstantial evidence that Michael purchased spice at defendants' store on June 3, 2011, it is mere speculation to conclude that the purchased spice caused Michael's injury.

According to Alcorn, Michael shared his spice with others on June 3, 2011, and Michael also combined his consumption with spice provided by another person. Michael also purchased spice from other locations, and Alcorn stated, "they would keep these stupid containers and they'd empty the packets into the container . . . ." Given this evidence, it is entirely speculative to conclude that any spice purchased from defendants' store caused Michael's adverse reaction. Moreover, Michael shared his spice with other members of the group, but no one else experienced issues similar to those experienced by Michael. In addition, we note that Michael was known to use Vicodin and Xanax, and to consume alcohol, and his initial exhibition of paranoia and hallucinations later became heightened.[2]

Plaintiff submitted a medical report from Dr. Gerald Shiener, who concluded that Michael's "illness could not have occurred but for the ingestion of the K2 Spice Compound." However, the report does not recognize that there were at least two sources of spice that Michael consumed on June 3, 2011, and it does not identify defendants' sale of spice as the cause of Michael's mental breakdown. Even if Dr. Shiener's report is accepted as competent evidence that Michael's ingestion of spice caused his mental breakdown, in light of the evidence that Michael purchased different brands of spice from other locations and the evidence that another person also supplied some of the spice that Michael consumed on June 3, 2011, it is mere speculation to conclude that spice purchased from defendants' store caused Michael's illness. In short, there is no evidence selectively identifying any spice purchased from defendants' store as the more likely cause of Michael's injury.

Plaintiff also argues that defendants' sale of spice in June 2011 violated MCL 333.7402, which became effective in April 2003 and served to ban controlled-substance analogues, and also violated various other statutes. Plaintiff argues that these breaches of a statutory duty of care establish a presumption of negligence. *Dep't of Transp v Christensen*, 229 Mich App 417, 420; 581 NW2d 807 (1998). However, according to Michigan's Department of Licensing and Regulatory Affairs, the Michigan Legislature banned spice and other synthetic drugs in 2012 by classifying them as Schedule 1 Drugs, and closing a loophole that allowed manufacturers to

---

[2] It is unknown whether Michael continued to abuse spice purchased from another establishment during the approximate five-day period between his purchase on June 3 and the burning of the home, or whether he used other drugs or alcohol that may have caused his progressively worsening illness.

continue the sale of a product by altering the chemical makeup of the drug.[3]  That amendment of MCL 333.7402 became effective on July 1, 2012, more than a year after Michael's purchase of the product in this case.  At any rate, regardless of whether the spice at issue was subject to regulation at the time of sale, such that any statutory violation may be considered prima facie evidence of a breach of duty of care, plaintiff must still demonstrate that defendants' sale was the proximate cause of Michael's injury.  As previously discussed, a factfinder would have to speculate that spice purchased from defendants' store was the cause of Michael's injury.  Thus, plaintiff's attempt to rely on a purported violation of the law does not alter our conclusion that summary disposition is warranted in defendants' favor.

Reversed and remanded for entry of an order granting summary disposition to defendants.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[3] Michigan's Department of Licensing and Regulatory Affairs, *Snyder signs bills to classify K2, Spice as Schedule 1 Drugs* <http://www.michigan.gov/lara/0,4601,7-154-10573_11472-280858--,00.html> (accessed March 1, 2017).