DEPARTMENT OF TRANSPORTATION v CHRISTENSEN

Docket Nos. 199189, 199716. Submitted November 6, 1997, at Lansing. Decided April 28, 1998, at 9:05 A.M.

William and Adele Farmer brought negligence actions against Eldon C. Christensen in the Jackson Circuit Court and against the Department of Transportation in the Court of Claims, seeking damages for injuries they sustained when their automobile struck a gravel hopper that had fallen onto a highway from a flatbed trailer towed by a truck driven by Christensen. The gravel hopper, whose height while on the trailer exceeded the maximum of 13 feet, 6 inches set by MCL 257.719(1); MSA 9.2419(1) and for which no permit for being over the limit was obtained despite being required by MCL 257.725; MSA 9.2425, had fallen off the trailer when it struck an overpass. The actions were consolidated in the circuit court, Alexander C. Perlos, J., where the department entered into a consent judgment with the plaintiffs and filed a cross-claim against Christensen for indemnification of the amount the department paid to the plaintiffs. The court granted summary disposition for Christensen on the cross-claim for indemnification. The department appealed.

The Court of Appeals *held*:

1. MCL 257.719(1); MSA 9.2419(1) provides for absolute liability on the part of the owner of an overheight vehicle for all damage and injury resulting from a collision between the vehicle and a lawfully established bridge or viaduct when the collision is caused by the height of the vehicle. Defenses of comparative negligence or joint and several liability are not available to the owner of such a vehicle.

2. It can be decided as a matter of law, not as a question to be decided by the trier of fact, that Christensen's violation of § 719(1) was a proximate cause of the plaintiffs' injuries inasmuch as reasonable minds cannot differ with respect to what caused the plaintiffs' injuries.

3. A contract by which Christensen must indemnify the department, which would have been an express contract had Christensen applied for a permit under § 725, must be implied in order to make liability under § 719(1) absolute and to prevent Christensen from improving his legal position by not having obtained a permit.

4. Christensen is bound by the department's settlement with the plaintiffs. The department did not have to tender its defense to Christensen or otherwise seek his consent and participation in the settlement inasmuch as their interests were in direct conflict. Christensen did not challenge the reasonableness of the settlement amount. There was ample justification to enter into the settlement so as to compensate the plaintiffs without unnecessary delay.

Reversed and remanded for entry of summary disposition for the department on the cross-claim for indemnification.

Highways — Maximum Vehicle Height — Owners' Absolute Liability for Damage or Injury Caused by Overheight Vehicles.

A vehicle, except by special permit, shall not be taller than 13 feet, 6 inches; the owner of a vehicle that exceeds that height is absolutely liable for all damage or injury resulting from a collision between the vehicle and a lawfully established bridge or viaduct when the collision is caused by the height of the vehicle; an indemnification agreement will be implied in favor of the governmental agency with jurisdiction over the highway and against the vehicle owner when the governmental agency is sued for negligent damage or injury in connection with such a collision (MCL 257.719[1], 257.725; MSA 9.2419[1], 9.2425).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Brenda E. Turner*, Assistant Attorney General, for Department of Transportation.

*Bullen, Moilanen, Klaasen & Swan, P.C.* (by *Terry J. Klaasen* and *David W. Swan*), for Eldon C. Christensen.

Before: SAAD, P.J., and HOLBROOK, JR., and DOCTOROFF, JJ.

PER CURIAM. Plaintiffs William and Adele Farmer brought this negligence action against, among others, Eldon C. Christensen and the Michigan Department of Transportation (MDOT) for injuries sustained in a traffic accident that ensued after a gravel hopper loaded on a flatbed semitrailer-truck driven by Chistensen

struck a highway overpass. The force of the impact knocked the gravel hopper off the semitrailer-truck and onto the highway where plaintiffs' vehicle struck it. The height of the gravel hopper at the point of impact was over the statutorily allowed maximum. The MDOT brought a cross-claim against Christensen for indemnification of the $25,000 that the MDOT paid to plaintiffs as a result of a consent judgment in the tort action. Cross-plaintiff MDOT now appeals as of right from the trial court's order granting summary disposition to cross-defendant Christensen on the MDOT's indemnification claim. We reverse and remand.

I

"This Court reviews de novo decisions regarding motions for summary disposition to determine if the moving party was entitled to judgment as a matter of law." *North Community Healthcare, Inc v Telford,* 219 Mich App 225, 227; 556 NW2d 180 (1996). In this appeal we are required to interpret and apply § 719(1) of this state's Vehicle Code:

> A vehicle unloaded or with load shall not exceed a height of 13 feet 6 inches. The owner of a vehicle that collides with a lawfully established bridge or viaduct is liable for all damage and injury resulting from a collision caused by the height of the vehicle, whether the clearance of the bridge or viaduct is posted or not. [MCL 257.719(1); MSA 9.2419(1).]

The first sentence of § 719(1) establishes the mandatory duty of care, i.e., a vehicle's height must not exceed 13 feet, 6 inches. For purposes of this appeal, the parties do not dispute that Christensen's truck breached this duty of care, being at least 13 feet, 10 inches in height, four inches over the statutorily allowed maximum. The overpass was marked

with a sign, installed by the MDOT, indicating that its clearance height was 14 feet, but the accuracy of this measurement is disputed. Nonetheless, from the evidence, it is clear that Christensen's truck struck the overpass, causing the gravel hopper to fall onto the highway. Plaintiffs' vehicle, which was following behind Christensen, then collided with the hopper.

The legal effect of Christensen's violation of the statutory duty of care, standing alone, would be enough to establish a prima facie case of negligence. *Zeni v Anderson*, 397 Mich 117, 128-129; 243 NW2d 270 (1976) (penal statute); *Klanseck v Anderson Sales & Service, Inc*, 426 Mich 78, 87; 393 NW2d 356 (1986) (licensing statute). While it is recognized that such a presumption of negligence may be rebutted with a showing of an adequate excuse or justification under the circumstances, *Zeni, supra* at 129-136, Christensen has not presented evidence of excuse or justification. Christensen might also escape liability under the statute if, by applying the "statutory purpose doctrine," *id.* at 138, n 22, it were judicially determined that the statute was inapplicable. Such a finding would be inappropriate on these facts because (1) the statute is intended to protect against the result of the violation, (2) plaintiffs are within the class intended to be protected by the statute, and (3) the evidence would support a finding that the violation was a proximate contributing cause of plaintiffs' injuries. *Klanseck, supra*. Thus, had there been a trial in this matter, the determination of Christensen's negligence should have been conclusively removed from the jury. *Id.*

Section 719(1), however, does not merely create a presumption of negligence, but rather in its second

sentence allows for a finding of absolute liability, i.e., liability "for all damage and injury resulting from a collision caused by the height of the vehicle, whether the clearance of the bridge or viaduct is posted or not." The parties dispute the meaning of this statutory language: the MDOT argues that the language means Christensen is absolutely liable for *all* damage and injury resulting from his truck's collision with the overpass, while Christensen argues (and the trial court agreed) that his ultimate liability was subject to the principles of comparative fault, joint and several liability, and proximate cause. For several reasons, we find merit in the MDOT's interpretation of the statute.

First, where statutory language is clear and unambiguous, we must honor the legislative intent as clearly indicated in that language. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 538-539; 565 NW2d 828 (1997). Thus, the phrase in § 719(1), "all damage and injury"—which is susceptible to only one meaning—must be ascribed that plain meaning. Second, while the regulatory scheme of § 719(1) incorporates the need for establishing proximate causation, once established it fixes liability on the violator even where concurrent or intervening acts of negligence precipitate a collision with a bridge or overpass. See 57A Am Jur 2d, Negligence, § 792, p 703. To hold otherwise, and allow Christensen to interpose defenses of comparative fault on the part of plaintiffs or joint and several liability on the part of the MDOT for its alleged negligence in marking the overpass with an inaccurate sign, would undermine the plain language of the absolute liability statute as well as its overriding regulatory purpose, i.e., protect-

ing bridges and overpasses, and the traveling public, from damage or injury as a result of nonconforming vehicles. See MCL 257.725(4); MSA 9.2425(4) (special-use permit for nonconforming vehicles is required "to protect the safety of the public or to ensure against undue damage to the road"). See also 57B Am Jur 2d, Negligence, § 1174, pp 96-97. Notably, § 719(1) expressly exempts the state from liability regardless of whether it has posted the clearance of the overpass.

This state's appellate courts have not recently interpreted the effect of an absolute liability statute. However, over a century ago, in *Flint & P M R Co v Lull*, 28 Mich 510 (1874), our Supreme Court considered the legal effect of a violation of a statute that mandated every railroad company to fence its track and place cattle-guards at all road crossings and further provided that a negligent or wilful violation of the statute would render the violator "liable for all damages" that resulted. *Id.* at 511. In allowing the plaintiff to recover the value of a cow that was killed by a passing train, despite the defendant's allegation that the plaintiff had negligently allowed his cow to run free, Justice COOLEY explained:

> There still remains the question, however, whether the railway company could be held liable if the plaintiff himself was guilty of contributory negligence. Were this a common-law action it is clear that such contributory negligence would be a defense. But this is not a common-law action. It is an action given expressly by a statute, the purpose of which is not merely to compensate the owner of property destroyed for his loss, but to enforce against the railway company an obligation they owe to the public. The statute is a police regulation, adopted as much for the security of passengers as for the protection of property. And the deci-

> sions may almost be said to be uniform that in cases like the present, arising under such statutes, the mere negligence of the plaintiff in the care of his property can constitute no defense. Indeed, if contributory negligence could constitute a defense the purpose of the statute might be in a great measure, if not wholly, defeated, for the mere neglect of the railway company to observe the directions of the statute would render it unsafe for the owner of beasts to suffer them to be at large or even on his own grounds in the vicinity of the road, so that if he did what, but for the neglect of the company, it would be entirely safe and proper for him to do, the very neglect of the company would constitute its protection, since that neglect alone rendered the conduct of the plaintiff negligent. [*Id.* at 514-515 (citations omitted).]

*Lull*, of course, was decided long before the Michigan Supreme Court abandoned the common-law doctrine of contributory negligence in favor of comparative negligence. See *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979). Since *Placek*, the Michigan Supreme Court has applied the defense of comparative negligence to a claim involving violation of a workplace safety statute, holding that the underlying public policy of comparative negligence—i.e., to encourage workplace safety by employers and employees alike—overcomes the former view that an action based on an employer's failure to provide adequate safety devices was not subject to the defense of contributory negligence. *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270 (1982). *Hardy*, however, did not involve application of an absolute liability statute, as here. Thus, we are of the opinion that Justice COOLEY's general premise in *Lull* remains viable today: Where a regulatory statute establishes a mandatory duty and imposes absolute liability for a breach of that duty, the common-

law defense of comparative negligence is not available.

In sum, we hold that the defenses of comparative negligence and joint and several liability were not available to Christensen in the negligence action based on his violation of MCL 257.719(1); MSA 9.2419(1).

Although we have interpreted § 719(1) as creating a presumption of negligence for its violation, proximate causation must still be established to impose absolute liability. See *Zeni, supra* at 138-139. In a negligence case, proximate cause is generally a factual issue to be decided by the trier of fact. *Vsetula v Whitmyer*, 187 Mich App 675, 682; 468 NW2d 53 (1991); *Derbeck v Ward*, 178 Mich App 38, 44; 443 NW2d 812 (1989). However, if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law. *Whitmyer, supra* at 682; *Derbeck, supra* at 44. Here, viewing the evidence in a light most favorable to plaintiffs, we believe that reasonable minds could not differ in finding that Christensen's violation of the safety statute was a proximate cause of plaintiffs' injuries. Thus, we hold as a matter of law that Christensen was absolutely liable for all damage and injury resulting from the collision of his overheight vehicle with the overpass. Because Christensen settled with plaintiffs following mediation, as did the MDOT, we need not remand this matter for a trial with respect to damages.

II

Cross-plaintiff MDOT asserts that it was entitled to indemnification from cross-defendant Christensen for

the $25,000 it paid to plaintiffs as a result of a consent judgment in the negligence action. We hold that the trial court erred in denying summary disposition to the MDOT on its cross-claim.

As we reaffirmed in *Universal Gym Equipment, Inc v Vic Tanny Int'l, Inc*, 207 Mich App 364, 372; 526 NW2d 5 (1994), "an action for indemnification can be maintained only on the basis of an express contract or, in the case of common-law or implied contractual indemnification, by a party who is free from negligence or fault." Pursuant to MCL 257.725; MSA 9.2425, Christensen was required to apply for a special-use permit from the MDOT to operate his overheight vehicle on highways under MDOT jurisdiction. At deposition, Christensen testified that he was aware of the permit requirement, but intentionally failed to apply for one. The MDOT argues that, had Christensen applied for a permit as required, it would have been entitled to indemnification under the permit application's "hold harmless" clause:

> The permittee shall be responsible for damages to the highway, to persons, and to property caused by or arising from operations covered by this permit.
>
> The permittee shall indemnify and save harmless the Transportation Commission, the department and all of their employees from any and all suits, claims, and damages of every kind arising out of, under, or by reason of this permit, or from operations covered by this permit.

Thus, the only reason why we are not analyzing this case on the basis of an express contractual indemnification is because Christensen did not apply for the statutorily required special-use permit. The MDOT argues that, given the equities of the circumstances, a

contract should be implied in law and its indemnification clause enforced. We agree.

Generally, if one person's wrongful act results in the imposition of liability on another who was without fault, indemnity may be obtained from the actual wrongdoer. *Langley v Harris Corp*, 413 Mich 592, 597-598; 321 NW2d 662 (1982); *Telford, supra* at 229. As previously noted, while the right frequently arises out of an express contract to indemnify, it can also be based on an implied contract or be imposed by law. *Skinner v D-M-E Corp*, 124 Mich App 580; 335 NW2d 90 (1983). Implied contractual indemnity is not available, however, unless the indemnitee is free from active negligence in causing the plaintiff's injury. *Id.* The requirement that the indemnitee be without fault is based in part on the underlying principle that liability should fall on the party best able to adopt preventive measures. *Id.; Langley, supra* at 599-600, n 4.

However, a claim of implied contractual indemnity is precluded if the complaint in the underlying action or the third-party complaint fails to state a basis for such a claim. *Universal Gym Equipment, supra* at 372; *Employers Mut Casualty Co v Petroleum Equipment, Inc*, 190 Mich App 57, 65-66; 475 NW2d 418 (1991). Although previous panels of this Court have examined the underlying complaint and the third-party complaint to see if there are any allegations of derivative or vicarious liability, as well as to see if the party seeking an implied contractual indemnification has denied any active negligence, see, e.g., *Universal Equipment, supra* at 372; *Employers Mut, supra* at 65-66, none of these cases have involved an absolute liability statute. As the Michigan Supreme Court observed in *Williams v Unit Handling Systems Divi-*

*sion of Litton Systems, Inc*, 433 Mich 755, 759; 449
NW2d 669 (1989), in both express and implied con-
tractual indemnification, "the action is based not on
the common-law rule that a person held vicariously
liable for the acts of another is entitled to indemnity,
but rather on the express or implied contractual
undertaking of the indemnitor." In the case at hand,
the MDOT's basis for indemnity is not that it was held
vicariously liable, but rather that § 719(1) places
absolute liability for the damages on Chistensen. We
believe such an assertion does state a basis for a
claim for indemnification. Further, we note that, by
violating § 725, Chistensen did not give the MDOT the
opportunity to "restrict or prescribe conditions of
operation of [Christensen's] . . . vehicle," MCL
257.725(4); MSA 9.2425(4), in such as manner as
might have prevented the collision from occurring.

Given these foregoing principles, we hold that the
MDOT is entitled to indemnification on the basis of an
implied contract. To hold otherwise would not only
create an inherent inconsistency with our holding in
part I of this opinion that § 719(1) creates absolute
liability for a breach of the statutory duty, but would
also allow Christensen to improve his legal position
by flagrantly violating the statutory requirement
under § 725 that he obtain a special-use permit to
operate his nonconforming vehicle on state highways.
This we will not do. As we concluded above, the MDOT
is without legal fault pursuant to MCL 257.719(1);
MSA 9.2419(1). Quite clearly, Christensen was at all
times in the best position to prevent the damage and
injury that occurred. *Skinner, supra.* The MDOT should
not be called upon to account for a dangerous condi-
tion created by the actions of Christensen. See *Hart*

*Twp v Noret,* 191 Mich 427, 432-434; 158 NW 17 (1916). We therefore conclude that the MDOT has established a basic right to indemnification.

Christensen argues, however, that he should not be bound by the MDOT's voluntary decision to settle with plaintiffs, where the MDOT neither tendered its defense to Christensen nor otherwise sought Christensen's consent or participation in the settlement negotiations. At the outset, we reject Christensen's argument that the MDOT was required to tender its defense to Christensen as a prerequisite for indemnification in this case. The legal interests of the MDOT and Christensen with respect to plaintiffs' tort claims were in direct conflict. While the MDOT's defense against liability to plaintiffs was based on Christensen's absolute liability under § 719(1), Christensen vigorously argued that the MDOT was jointly and severally liable. Therefore, given this conflict of interest, we hold that the MDOT was not required to tender its defense to Christensen.

Although there was no tender-of-defense requirement, Christensen argues that the MDOT took on the status of a volunteer when it settled with plaintiffs, notwithstanding its vigorously argued claim that Christensen was solely liable to plaintiffs under § 719(1). While this argument has certain appeal, on closer inspection we find that it also lacks merit. Notably, despite an opportunity to challenge the reasonableness of the settlement amount in the lower court and in this Court, Christensen has not done so. Thus, we must presume that Christensen believes the settlement amount to be a fair and accurate reflection of the amount of the judgment he would have sustained had this matter gone to trial. *Ford v Clark*

*Equipment Co*, 87 Mich App 270; 274 NW2d 33 (1978); *Farmers Ins Group v Progressive Casualty Ins Co*, 84 Mich App 474, 485; 269 NW2d 647 (1978). See also *Parfait v Jahncke Service, Inc*, 484 F2d 296, 305 (CA 5, 1973).

Moreover, our review of the record reveals ample justification for the MDOT's decision to enter into a consent judgment with plaintiffs. First, the policy of this state is to encourage the settlement of lawsuits because it benefits both the parties and the public. *Ford, supra* at 277. Nonetheless, an indemnitor's due process interests would be adversely affected if it were bound by its indemnitee's unilateral acts without providing notice and an opportunity to be heard. *GAB Business Services, Inc v Syndicate 627*, 809 F2d 755 (CA 11, 1987). Accord MCL 600.2925a; MSA 27A.2925(1) (setting forth criteria for contribution from nonsettling joint tortfeasor). There is no dispute here that the MDOT failed to provide Christensen with notice of, and an opportunity to participate in, the settlement negotiations between the MDOT and plaintiffs.

"Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants." *Tankrederiet Gefion A/S v Hyman-Michaels Co*, 406 F2d 1039, 1043-1044 (CA 6, 1969). During the hearing regarding Christensen's motion for summary disposition of the MDOT's cross-claim for indemnification, counsel for the MDOT explained that one of the reasons for its decision to settle with plaintiffs was to ensure timely payment to the injured plaintiffs while it pursued its claim on appeal that § 719(1) imposed

absolute liability against Christensen. We note that just a few weeks preceding entry of the consent judgment, the trial court had ruled, despite the clear language of § 719(1), that the MDOT could not escape liability for its alleged negligence in posting an inaccurate sign on the overpass. Hence, by avoiding an imminent trial on the underlying tort claims, the MDOT ensured that the injured plaintiffs were compensated without unnecessary delay and also avoided the expense of a trial. We also note that, during the hearing regarding the MDOT's motion for summary disposition in May 1996—less than two months before entry of the consent judgment—counsel for the MDOT indicated that he would take an appeal from an unfavorable ruling of the trial court with respect to application of § 719(1). Accordingly, the MDOT's decision to settle with plaintiffs was justified and resulted in no prejudice to Christensen.

Reversed and remanded for entry of an order granting summary disposition to the MDOT on its cross-claim for indemnification.