# STATE OF MICHIGAN

# COURT OF APPEALS

Estate of GARRETT TOWNSEND, JR., by
SHIRLEY CONERLY and MARSHA WEBB, Co-
Personal Representatives,

        Plaintiffs,

v

SCRIPPS PARK ASSOCIATES, L.L.C., and
SLAVIK COMPANY,

        Defendants,

and

FIELEK BUILDERS, L.L.C., FIELEK
CONSTRUCTION SERVICES, L.L.C., and
FIELEK ENTERPRISES, L.L.C.,

        Defendants/Cross-Defendants,

and

NTH CONSULTANTS, LTD., a/k/a NEYER
TISEO & HINDO, LTD.,

        Defendant/Cross-Plaintiff-
        Appellant,

and

EXSPEC CONTRACTING, L.L.C.,

        Defendant/Cross-Defendant-
        Appellee.

NIYA I. TOWNSEND, a Minor, by her Next
Friend, SHIRLEY CONERLY,

UNPUBLISHED
November 20, 2014

No. 317133
Wayne Circuit Court
LC No. 09-028671-NO

                Plaintiff,

v                                                          No. 317135
                                                           Wayne Circuit Court
SCRIPPS PARK ASSOCIATES, L.L.C., and                       LC No. 10-013593-NO
SLAVIK COMPANY,

                Defendants,

and

FIELEK BUILDERS, L.L.C., FIELEK
CONSTRUCTION SERVICES, L.L.C., and
FIELEK ENTERPRISES, L.L.C.,

                Defendants/Cross-Defendants,

and

NTH CONSULTANTS, LTD., a/k/a NEYER
TISEO & HINDO, LTD.,

                Defendant/Cross-Plaintiff-
                Appellant,

and

EXSPEC CONTRACTING, L.L.C.,

                Defendant/Cross-Defendant-
                Appellee.

---

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

In these consolidated cases, defendant NTH Consultants, Ltd. ("NTH"), appeals as of right, challenging the trial court's order denying its motion for summary disposition and granting summary disposition in favor of defendant ExSpec Contracting, L.L.C. ("ExSpec"), with respect to NTH's cross-complaint for indemnification. We reverse in part and remand for further proceedings.

This litigation arises from a drowning death that occurred at a construction site. An underground storage tank was discovered during construction at the Woodbridge Estates Condominiums. NTH, an environmental consulting firm, retained ExSpec, an excavating company, to remove contaminated soil at the site. ExSpec was responsible for site safety,

including fencing, pursuant to the parties' contract. Water accumulated in the hole that was created by the excavation. Plaintiffs' decedent drowned while trying to save a young child trapped in the hole. Plaintiffs filed suit against NTH, ExSpec, and other contractors working at the construction site. NTH filed a cross-claim against ExSpec, asserting that ExSpec had a duty to defend and indemnify it for plaintiffs' litigation. The contract between NTH, designated as the "Engineer," and ExSpec, identified as the "Subcontractor," contained the following pertinent provisions:

> **Warranties & Guaranties**  Subcontractor warrants that its work shall be free from defects and shall be suitable for the use intended. In the event that any deficiencies in Subcontractor's work are discovered within one year after completion of the project, Subcontractor shall, at its sole cost, repair, replace or repeat any defective work, including repair of any portion of the project or property damaged by repair, replacement or repeating of defective work. This warranty is in addition to any other remedy which Engineer may have.

> \* \* \*

> **Indemnity**  Subcontractor agrees to defend, indemnify and hold harmless Engineer, its officers, employees, shareholders and agents from and against any and all claims, damages, liability, suits, actions and expenses, including reasonable attorney's fees, relating to any and all losses or damages sustained by or alleged to have been sustained by any person, including employees of the parties hereto, and arising or allegedly arising from Subcontractor's performance or failure to perform the services set forth in this Agreement, regardless of whether or not concurrently caused by the negligence of Engineer, except that Subcontractor shall not be required to defend, indemnify and hold harmless Engineer from claims, damages or liability arising from the sole negligence or willful misconduct of Engineer.

> \* \* \*

> **Job Site Safety**  Subcontractor shall be solely responsible for the safety of persons or property on, or adjacent to the job site. Subcontractor shall be responsible for his/her activity and that of Subcontractor's employees or agents on the job site with respect to job site safety. Neither the professional activities nor the presence of Engineer or its employees, Contractors, and Subcontractors shall be understood to control the operations of others.

> \* \* \*

> Subcontractor is responsible for providing, at its own expenses, all personal protective clothing and equipment required for its employees to perform their work in a safe manner and in compliance with all applicable local, state, and federal laws and regulations including, but not limited to OSHA standards. Subcontractor is responsible for ensuring that such equipment is in good condition and is properly inspected and maintained. In cases where a Job Safety Plan has

been prepared or adopted by Engineer or its client, Subcontractor must, at a minimum, use the equipment and follow the procedures described in that plan. This does not relieve the Subcontractor of the responsibility to provide equipment and institute procedures affording a greater degree of protection than those specified in the Job Safety Plan, if such equipment and procedure are necessary for the Subcontractor to perform its tasks in a safe manner and in compliance with applicable local, state, and federal regulations.

Relying on the terms of the contract, NTH filed a motion for summary disposition of its cross-claim pursuant to MCR 2.116(C)(10). The trial court denied NTH's motion, holding that there were disputed factual issues, but granted summary disposition in favor of ExSpec pursuant to MCR 2.116(I)(2). Afterward, NTH filed a motion for summary disposition of plaintiffs' claims, which the trial court granted. The case proceeded to trial against the remaining defendants. A jury found that ExSpec was negligent, but its negligence was not the proximate cause of plaintiffs' injuries. After entry of a judgment in favor of plaintiffs against other contractors, NTH filed this appeal, challenging the trial court's earlier order denying its motion for summary disposition and granting summary disposition in favor of ExSpec with respect to the cross-claim for indemnification.

## I. STANDARD OF REVIEW

A trial court's decision to grant or deny summary disposition is reviewed de novo. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). A motion premised on MCR 2.116(C)(10) tests the factual support of the complaint. *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013). "The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Once this burden is satisfied, the nonmoving party must demonstrate that a genuine issue of disputed fact exists for trial. *Id.* Summary disposition is proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." MCR 2.116(C)(10). If the court determines that the opposing party, instead of the moving party, is entitled to judgment, the court may enter judgment in favor of the opposing party. MCR 2.116(I)(2); *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 513; 844 NW2d 470 (2014). Thus, if the terms of a contract demonstrate that the nonmoving party is entitled to judgment as a matter of law, the court may enter summary disposition pursuant to MCR 2.116(I)(2). *Id.* at 514.

## II. INDEMNIFICATION

"Generally, indemnification is an equitable doctrine that shifts the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another whose active negligence is the primary cause of the harm." *St Luke's Hosp v Giertz*, 458 Mich 448, 453; 581 NW2d 665 (1998). A claim for indemnification may be premised on an express contract, an implied contract, or the common law. *Dep't of Transp v Christensen*, 229 Mich App 417, 425; 581 NW2d 807 (1998). This case involves an indemnification provision in an express contract. In cases involving contractual indemnity, a party's entitlement to indemnification is determined

by the terms of the contract to which the parties agreed. *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 351; 686 NW2d 756 (2004).

An indemnification contract is interpreted in the same manner as other contracts. *Zahn v Kroger Co of Mich*, 483 Mich 34, 40; 764 NW2d 207 (2009). The interpretation of a contract presents a question of law that the appellate court reviews de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). The goal of contract construction is to first determine and then enforce the parties' intent. *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). When the contract language is clear and unambiguous, the contract must be enforced as written. *Id*. In *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997), this Court delineated the following principles of contract construction:

> If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. Parol evidence is not admissible to vary a contract that is clear and unambiguous, but may be admissible to prove the existence of an ambiguity and to clarify the meaning of an ambiguous contract. [Citations omitted.]

In *Miller-Davis*, our Supreme Court discussed the nature of indemnification in relationship to construction contracts, stating:

> An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation. In the construction context, indemnity clauses between general contractors (indemnitees) and subcontractors (indemnitors) are common, with general contractors and subcontractors ultimately liable to the project owner. Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses. The only legal restriction upon indemnity in the subcontractor context is the prohibition on indemnification against the "sole negligence" of the contractor . . . . [*Miller-Davis*, 495 Mich at 173 (footnotes omitted).]

The initial inquiry whether a contract's indemnity clause applies to a particular set of facts requires the court to conduct a straightforward analysis of the facts in relationship to the terms of the contract. *Id*. at 174. A contract with an express indemnification provision delineates the extent of the duty as set forth in the contract. *Id*. An indemnification clause that uses the terms "all" or "any" imparts the broadest possible obligation. *Id*. at 175. "In essence, an indemnification provision is to be construed to effectuate the intentions of the parties to the contract, which is determined through review of the contract language, the situation of the parties, and the circumstances involved in the initiation of the contract." *Ajax Paving Indus, Inc v Vanopdenbosch Constr Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010). "On appeal, this

Court interprets an indemnification provision in a manner that will serve to provide a reasonable meaning to all the terms contained therein." *Id.*

In *DaimlerChrysler Corp v G-Tech Prof Staffing, Inc*, 260 Mich App 183, 184; 678 NW2d 647 (2003), the plaintiff, DCC, sued to enforce an indemnity clause in a written contract with the defendant, G-Tech, the entity that furnished supplemental workers. The underlying litigation arose from a motor vehicle accident in which a worker supplied by G-Tech struck and killed a pedestrian. DCC moved for summary disposition in light of the language of the indemnity provision, and the trial court granted summary disposition in its favor. *Id.* On appeal, G-Tech alleged that indemnification for personal injuries only occurred when the worker supplied to DCC was performing tasks for DCC. *Id.* This Court rejected G-Tech's position, holding:

> G-Tech, in essence, argues that it must indemnify DCC only for personal injuries that occur when the workers it supplied to DCC are actually performing tasks for DCC. Given the undisputed facts and the unambiguous contract language, G-Tech's position lacks merit. The parties do not dispute: (1) that G-Tech supplied [worker Shane] Smith to DCC pursuant to their contract, (2) that Smith was driving a DCC-owned Jeep with the permission of DCC, and (3) that Smith would not have been driving the DCC Jeep but for working for DCC at its TAP engineering department. The parties also do not dispute that the contract at issue provides that G-Tech "shall assume all risk of . . . bodily injury . . . in connection with the work, and . . . bodily injury . . . wherever located, resulting from or arising out of any action, omission or operation under the contract or in connection with the work." Further, the contract requires G-Tech to indemnify DCC "from and against any and all . . . claims, or legal actions . . . arising out of the bodily injury . . . arising out of or related to the performance of any work in connection with this contract . . . ."
>
> The plain language of the indemnity clause does not require that personal injury occur while work is being performed. It only requires that the personal injury arise out of, or be related to, the performance of any work in connection with the contract. The trial court correctly concluded that the contract language is expansive. The word "related" ordinarily means being "associated" or "connected." See *Random House Webster's College Dictionary* (2d ed., 1997). Likewise, "connection," in the context clearly employed here, plainly means "logical association or development . . . *to make a connection between two events.*" *Id.* The undisputed facts of this case show a logical association connecting the contract, and Smith's work under the contract, to the accident. The trial court correctly found that connection: G-Tech supplied Smith to DCC under the contract and Smith had use of the DCC Jeep he was driving at the time of the accident through his work at DCC. [*Id.* at 186-187.]

An indemnity contract may be construed against the drafter only when an ambiguity is presented and all other avenues of construing the ambiguity are exhausted. *Id.* at 187.

## A. DUTY TO DEFEND

"The duty to defend and the duty to indemnify are distinct and separable duties." *Mich Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 116-117; 617 NW2d 725 (2000). The duty to defend is broader than the duty to indemnify. *Busch v Holmes*, 256 Mich App 4, 9; 662 NW2d 64 (2003). However, it too arises from the language of the contract. *Mich Ed Employees Mut Ins Co*, 242 Mich App at 117. A contracting party has the duty to defend if the allegations in an underlying lawsuit arguably fall within the terms of the contract. See *Citizens Ins Co v Secura Ins*, 279 Mich App 69, 74; 755 NW2d 563 (2008).

In the context of insurance contracts, this Court has delineated the following rules regarding the duty to defend:

> The duty of an insurance company to defend its insured arises solely from the language of the insurance contract. The insurer's duty to defend is determined by the allegations in the complaint against the insured. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. [*Farmers & Merchants Mut Fire Ins Co v Le Mire*, 173 Mich App 819, 824; 434 NW2d 253 (1988) (citations omitted).]

The duty to defend is premised upon the language of the contract, and the duty is invoked if the allegations in the underlying suit arguably fall within the terms of the contract. *Citizens Ins Co*, 279 Mich App at 74; *Mich Ed Employees Mut Ins Co*, 242 Mich App at 117. The duty to defend is summoned even if the underlying complaint raises claims that are not governed by the terms of the contract, provided any theory of recovery is controlled by the contractual language. See *Farmers & Merchants Mut Fire Ins Co*, 173 Mich App at 824.

The contract between NTH and ExSpec provided that ExSpec agreed to "defend [NTH] . . . from and against any and all claims . . . relating to any and all losses or damages sustained by or alleged to have been sustained by any person . . . arising or allegedly arising from [ExSpec's] performance or failure to perform the services set forth in this Agreement, regardless of whether or not concurrently caused by the negligence of [NTH][.]" The use of the terms "all" or "any" impart the broadest possible obligation. *Miller-Davis*, 495 Mich at 175. The use of the term "related" means an "association" or "connection." *DaimlerChrysler Corp*, 260 Mich App at 187. A contract that uses the terms "any," "all," and "related," is an expansive agreement. *Id*.

Plaintiffs' complaints sought to hold NTH responsible for its own acts of negligence, the collective acts of negligence by all defendants, and ExSpec's negligence. Plaintiffs alleged that: (1) ExSpec created the excavation hole which gave rise to an unreasonable risk of harm; (2) that ExSpec failed to protect the excavation hole with an adequate barrier or fence; (3) that all defendants acted in concert to create the hole and allowed it to be filled with water; and (4) the defendants collectively acted to excavate a hole 100 feet wide and 20 feet deep that filled with water and was unstable, creating an unreasonably dangerous condition. Plaintiffs sought to hold

NTH liable for its own alleged acts of negligence, as well as the alleged negligence committed by ExSpec with regard to its excavation and failure to protect the area with barriers or fencing, and the claimed collective acts of negligence by all defendants. Plaintiffs' complaints included allegations that were governed by the broad contractual language requiring ExSpec to defend NTH from claims related to NTH's and ExSpec's performance. Therefore, the trial court erred in denying NTH's motion for summary disposition with regard to the duty to defend.

In support of affirming the trial court's decision, ExSpec contends that plaintiffs' claims did not arise from ExSpec's performance of the contract. This argument is contrary to the language of plaintiffs' complaints, which sought to hold ExSpec responsible for its own alleged negligence in failing to adequately provide barriers and fencing following the excavation.

ExSpec also asserts that the summary disposition ruling should be affirmed because NTH agreed to perform a "breadth" of professional services, NTH directed ExSpec regarding the removal of the soil and did not instruct it to backfill the hole, ExSpec's performance was limited to three days, and it was never the intention to have ExSpec act as a professional liability insurance carrier. None of these claims overcome the broad contractual language requiring ExSpec to defend NTH from claims related to NTH's and ExSpec's performance. Michigan law presumes that one who signs a contract knows its nature and understands its contents. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184; 405 NW2d 88 (1987). The purpose of the rule is to ensure the integrity and stability of written instruments. *Id*. Regardless of ExSpec's limited performance of the contract with NTH to a period of three days, it agreed to the terms of the contract, which included a warranty that the work was free from defects, suitable for the use intended, and defects were to be repaired or replaced at the sole cost of ExSpec if found within a year after completion of the project. Thus, the completion of its work on a given day did not absolve ExSpec of liability. ExSpec also agreed to assume a duty to defend and indemnify, as well as the job-site safety provision. In light of the plain language of the terms of the contract to which ExSpec agreed, it cannot be absolved of liability by relying on its limited involvement with the construction project.

Finally, ExSpec asserts that it performed the contract as directed, that NTH accepted the standard fencing, and the claims of negligence raised by plaintiffs pertained to "extras" not contained in the contract, and accordingly, the duties to defend and indemnify were not invoked. As indicated, the duty to defend is broad and may extend to even meritless suits so long as the allegations arguably fall within the terms of the contractual provision. *Farmers & Merchants Mut Fire Ins Co*, 173 Mich App at 824. An examination of plaintiffs' complaints indicates that they questioned the reasonableness of the barriers and fencing in light of soil erosion. ExSpec's contention that it satisfied the contract and was not in breach is not controlling for purposes of the duty to defend because the allegations in the complaint govern the scope of that duty.

Accordingly, we reverse the trial court's order denying NTH's motion for summary disposition and granting summary disposition in favor of ExSpec with respect to the duty to defend, and remand for a determination of defense costs associated with that duty.

-8-

## B. DUTY TO INDEMNIFY

To the extent that NTH argues that the trial court also erred by concluding that ExSpec did not have a duty to indemnify NTH, we conclude that it is unnecessary to address this issue because it is moot. After the trial court granted summary disposition in favor of ExSpec regarding the duty to defend and indemnify, NTH was dismissed from the litigation on May 1, 2012, when the trial court granted its motion for summary disposition of plaintiffs' claims against it. The duty to defend may encompass the costs and attorney fees associated with NTH's defense of the action until summary disposition of plaintiffs' claims was granted. Because NTH was subsequently dismissed from the litigation, thereby eliminating any possibility that it could be held liable for any damages to plaintiffs, any question involving ExSpec's duty to indemnify NTH has been rendered moot. An issue is moot when a judicial determination cannot have any practical legal effect on the existing controversy. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). In light of NTH's dismissal, there can be nothing for ExSpec to indemnify. Thus, any claim involving ExSpec's duty to indemnify NTH presents only an abstract question of law. This Court does not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

Reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens