*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GABRIELLE/MHT LIMITED DIVIDEND
HOUSING PARTNERSHIP and BENJAMIN
MANOR MHT DIVIDEND HOUSING
ASSOCIATES, LLC,

UNPUBLISHED
August 13, 2020

Plaintiffs-Appellees,

v

No. 346058
Wayne Circuit Court
LC No. 16-009465-CB

HAMILTON AVENUE PROPERTY HOLDING,
LLC, STATEWIDE RECYCLING & RECOVERY,
INC., RECYCLING REVOLUTION, LLC,
JEFFREY SESKIN, and NATHAN SESKIN,

Defendants-Appellants.

Before: RONAYNE KRAUSE, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal as of right, challenging a judgment entered in favor of plaintiffs, following a jury trial, in this action involving claims for negligence, gross negligence, and nuisance related to a warehouse fire that damaged plaintiffs' neighboring properties. The trial court also entered an order allowing plaintiffs to pierce the corporate veil with respect to defendants Hamilton Avenue Property Holding, LLC ("Hamilton Avenue"), and Recycling Revolution, LLC ("Recycling Revolution"), thereby also imposing personal liability on defendants Jeffrey Seskin and Nathan Seskin, but denying a similar request with respect to defendant Statewide Recycling & Recovery, Inc. ("Statewide Recycling"). We affirm.

## I. BACKGROUND

This case arises from a warehouse fire in Highland Park, Michigan. Plaintiffs operate housing complexes near the warehouse. The warehouse consisted of approximately 560,000 square feet and was owned by defendant Hamilton Avenue. Defendants Statewide Recycling and Recycling Revolution leased or occupied space at the warehouse. Defendants Jeffrey Seskin and

-1-

Nathan Seskin are brothers who were the owners, principals, or managers of Hamilton Avenue, Statewide Recycling, and Recycling Revolution at the time of the fire.

Only approximately 10,000 square feet of the warehouse had been approved by the Highland Park Fire Department for occupancy. The remainder of the warehouse was deemed unsafe for use because of, among other things, deficient sprinkler systems and water-flow systems. Defendants were advised to bring the property into compliance with all local, state, and federal laws, but failed to do so. At the time of the fire, defendants were using more than the allowed 10,000 square feet approved for occupancy for, among other purposes, the unauthorized processing of plastic products.

At trial, plaintiffs presented evidence that there were multiple types of recycling activities being performed at the warehouse before the fire, but the city had approved only a limited portion of the warehouse for occupancy, limited to metal recycling. Only a third recycling company owned by Jeffrey, Recycling Depot, had obtained a proper business license to recycle metal. However, other materials were being stored or recycled in the warehouse, including plastics, cardboard, paper, and mattresses. Evidence was presented that Nathan's company, Recycling Revolution, was recycling large amounts of plastics in the warehouse, even though it did not have a license to operate that business. Although Jeffrey testified that Statewide Recycling had ceased doing business by the time of the fire, Jeffrey admitted that Statewide Recycling's equipment was stored at the warehouse and it was plaintiffs' theory that Statewide Recycling was also continuing to operate, including recycling combustible materials other than plastics or metals.

The fire started in or near a breakroom in the middle of the structure, but because the water to the fire-suppression system had been turned off, the sprinkler system was not activated. Because the fire alarm system was not functioning properly and there were apparently no smoke detectors in the facility, the fire was only reported when two employees discovered it after smelling smoke and had unsuccessfully attempted to extinguish it with fire extinguishers. Firefighters responded promptly after being notified of the fire, but the presence of hazardous or flammable materials caused the fire to spread quickly and prevented the firefighters from controlling the fire. The fire caused damage to plaintiffs' nearby properties, including extensive contamination by toxic soot, as well as the displacement of plaintiffs' residents.

Both Recycling Revolution and Statewide Recycling moved for directed verdicts on the negligence and gross negligence claims. The trial court granted Statewide Recycling's motion, but denied Recycling Revolution's motion. The jury determined that Hamilton Avenue, Recycling Revolution, and Statewide Recycling were each liable for nuisance, and that Hamilton Avenue and Recycling Revolution were also liable for negligence and gross negligence.

The trial court entered a judgment awarding plaintiff Gabrielle/MHT Limited Dividend Housing Partnership damages of $6,351,183, plus costs, interest, and sanctions, and awarding plaintiff Benjamin Manor MHT Dividend Housing Associates, LLC, damages of $1,040,609, plus costs, interest, and sanctions. Thereafter, plaintiffs moved to pierce the corporate veil with respect to the corporate defendants. The trial court granted the motion with respect to defendants Hamilton Avenue and Recycling Revolution, thereby also imposing personal liability on defendants Jeffrey and Nathan Seskin, but denied the motion with respect to defendant Statewide Recycling. Defendants now appeal.

## II. ANALYSIS

Defendants argue that the evidence did not support the jury's verdicts against Recycling Revolution and Statewide Recycling. After the parties rested at trial, the trial court denied defendants' motion for a directed verdict on the negligence and gross negligence claims against Recycling Revolution, but granted the motion with respect to these claims against Statewide Recycling. As plaintiffs observe, defendants did not move for a directed verdict of the nuisance claim against either of these defendants. However, in the context of discussing jury instructions, defendants argued that there was no evidence to support an instruction on nuisance with respect to either Recycling Revolution or Statewide Recycling, but the trial court disagreed. Accordingly, appellate consideration of these claims is appropriate.[1]

We review de novo a trial court's decision on a motion for a directed verdict. *Roberts v Saffell*, 280 Mich App 397, 401; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009). A directed verdict should be granted only when no factual question exists upon which reasonable minds could differ. *Id*. The evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party to determine whether a question of fact existed. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 428; 711 NW2d 421 (2006).

Jury instructions should not omit material issues or theories that are supported by the evidence. *Ward v Consol Rail Corp*, 472 Mich 77, 83-84; 693 NW2d 366 (2005). However, "it is error to instruct a jury about an issue unsustained by the evidence." *Murdock v Higgins*, 454 Mich 46, 60; 559 NW2d 639 (1997). "The determination whether an instruction is . . . applicable to a case rests within the sound discretion of the trial court." *Stevens v Veenstra*, 226 Mich App 441, 443; 573 NW2d 341 (1997).

### A. CLAIMS AGAINST RECYCLING REVOLUTION

The jury found Recycling Revolution liable for negligence, gross negligence, and nuisance. In their motion for a directed verdict of the negligence and gross negligence claims, defendants argued that Recycling Revolution should be dismissed because it was only a tenant, it had no obligation to oversee the fire-suppression system in the warehouse, and there was no evidence that it violated any standard of care related to the fire. Defendants also argued that it was not foreseeable that any activity by Recycling Revolution would endanger plaintiffs. In addition, defendants argued that a directed verdict was appropriate because plaintiffs' expert could not determine what caused the fire, thereby preventing plaintiffs from establishing that any activity by Recycling Revolution was a proximate cause of plaintiffs' damages.

Plaintiffs agreed that Recycling Revolution, as a tenant in the warehouse, could not be liable for failure to maintain the fire-suppression system, but argued that its activities, including

---

[1] We disagree with plaintiffs' argument that defendants' appellate arguments are not properly presented because they are not encompassed within defendants' statements of the questions presented. See *River Investment Group v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010).

its storage of large quantities of plastic materials, contributed to the intensity of the fire and caused the fire to rapidly spread throughout the building, thereby subjecting it to liability.

The trial court denied the motion for a directed verdict for the following reasons:

> The Court will now rule on the Defendant's [sic] Motion for Directed Verdict on the Plaintiff's [sic] negligence claims.
>
> \* \* \*
>
> Recycling Revolution's Motion for Directed Verdict as to negligence and gross negligence is denied. While there is no law indicating that a general legal duty exist [sic] between a commercial tenant and a neighbor, the facts in this particular case applied to the relevant legal duty factors indicate that a legal duty exist [sic] which would require Recycling Revolution to conform to a particular standard of care in order to protect the Plaintiffs against unreasonable risk of harm.
>
> Plaintiff [sic] have introduced evidence establishing that Recycling Revolution did not obtain a license to operate, that the storage of plastics without such a license was not permitted under Highland Park ordinances, and that Recycling Revolution was aware that an authorized fire safety consultant was necessary to make recommendations and changes regarding fire safety.
>
> The Recycling Revolution and Hamilton Avenue LLC's were owned by brothers and there is evidence that Recycling Revolution's controlling member Nate Seskin was intimately involved in the operations of both Recycling Revolution and Hamilton Avenue.

To establish a prima facie case of negligence, the plaintiff must be able to prove (1) a duty owed by the defendant, (2) breach of that duty, (3) causation, and (4) damages. *Haliw v City of Sterling Hgts*, 464 Mich 297, 309-310; 627 NW2d 581 (2001). The violation of a statutory duty of care can establish a prima facie case of negligence. *Farmer v Christensen*, 229 Mich App 417, 420; 581 NW2d 807 (1998).

Defendants primarily argue that Recycling Revolution, as only a tenant of the warehouse, did not owe a duty of care to plaintiffs, as neighboring property owners. Defendants focus on the lack of evidence that Recycling Revolution had control over the entire warehouse or was responsible for either causing the fire to start or failing to make sure that the fire-suppression system was operational. However, plaintiffs' theory of liability was premised on their claim that Recycling Revolution was illegally operating a plastics-recycling business in the warehouse, with knowledge that it had not passed the city's inspection to obtain a business license, and that the illegal presence of large amounts of plastic in that business contributed to the intensity of the fire and caused it to rapidly spread throughout the warehouse, leading to the destruction of the entire building and the caking of neighboring properties with soot and toxic materials.

Contrary to defendants' argument, Recycling Revolution's status as a tenant in the building did not preclude it from owing a duty of care to plaintiffs, as neighboring property owners. In

general, the common law imposes a duty on every person engaged in any undertaking the obligation to use due care or to not unreasonably endanger the person or property of others. *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967), impliedly overruled on other grounds by *Fultz v Union-Commerce Assoc*, 470 Mich 460 (2004); *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). In *Hill v Sears, Roebuck & Co*, 492 Mich 651, 661; 822 NW2d 190 (2012), this Court explained:

> At common law, "[t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part *to act* for the benefit of the subsequently injured person." "[T]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." Factors relevant to the determination whether a legal duty exists include the "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." We have recognized, however, that "[t]he most important factor to be considered [in this analysis] is the relationship of the parties" and also that there can be no duty imposed when the harm is not foreseeable. In other words, "[b]efore a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable." If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors. [Footnotes omitted.]

In *McCurtis v Detroit Hilton*, 68 Mich App 253, 255-256; 242 NW2d 541 (1976), this Court recognized that both a tenant and a landlord may be liable for conditions of leased property:

> Generally where a premises is leased to a tenant, the lease is considered as equivalent to a sale of the premises for the lease term. See Prosser, Torts (4th Ed), § 63, p 399; Harkrider, Tort Liability of a Landlord, 26 Mich L Rev 260, 383 (1928). The tenant is said to be the owner of the premises and as such is subject to all the responsibilities of one in possession, both to those who enter upon the land and those outside of its boundaries. Prosser, *supra*, 399. As a result, a landlord who gives up control, possession and use of the land does not have a duty to maintain the premises in a reasonably safe condition and is not liable to persons injured on the premises. *Whinnen v 231 Corp*, 49 Mich App 371, 375; 212 NW2d 297 (1973), 49 Am Jur 2d, Landlord and Tenant, § 780, pp 722-725. However, it has also been held that a landlord will be liable for the injuries incurred by another even though the landlord has given up complete control, possession and use of the premises where: (1) at the time the premises is transferred to the tenant a hidden dangerous condition exists, the landlord knows or should have known of the condition and fails to apprise the tenant of it, or (2) the premises is leased for a purpose involving public admission and the landlord fails to exercise reasonable care to inspect and repair the premises before possession is transferred. See generally, *Bluemer v Saginaw Central Oil & Gas Service*, 356 Mich 399; 97 NW2d 90 (1959); *Samson v Saginaw Professional Building Inc*, 393 Mich 393; 224 NW2d 843 (1975); Prosser, *supra*, 401-402, 403-405. In the above two situations, a party is allowed to recover from a landlord on a nuisance as opposed to negligence theory. *Bluemer v Saginaw Central Oil & Gas Co*, *supra*; Prosser, *supra*, 401-402.

Recycling Revolution's status as a tenant, rather than an owner, does not relieve it from liability for conditions on the land within its control that contributed to plaintiffs' damages. The evidence supported a finding that Recycling Revolution owed a duty of care to plaintiffs, as neighboring property owners, arising from its use of the leased property. It was reasonably foreseeable that the recycling of materials that are considered hazardous or flammable presented a risk of harm to neighboring property owners, especially when conducted in violation of regulations and ordinances related to fire safety. Accordingly, the trial court did not err by denying the motion for a directed verdict on the ground that Recycling Revolution, as a mere tenant, owed no duty of care to plaintiffs.

Defendants argue that Recycling Revolution was also entitled to a directed verdict with respect to the issue of proximate cause because the evidence failed to establish that it caused the fire. Proximate cause, or legal cause, involves examining the foreseeability of consequences and whether the defendant should be held liable for such consequences. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). A court must first find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's act was the proximate or legal cause of the injuries. *Id*.

In *Ridley v Collins*, 231 Mich App 381, 389; 590 NW2d 69 (1998), this Court explained:

> The question whether wrongful conduct is so significant and important as to be considered a proximate cause of an injury depends in part on foreseeability. *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977); *Ross v Glaser*, 220 Mich App 183, 192; 559 NW2d 331 (1996). A proximate cause is one that operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injury would not have occurred. *Id*. at 192-193. The determination whether wrongful conduct may be considered a proximate cause of an injury involves a determination whether the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. *Id*.

Although plaintiffs could not prove that Recycling Revolution was directly responsible for starting the fire, the evidence supported a finding that its activities contributed to the intensity and rapid spread of the fire. It was reasonably foreseeable that the use or storage of large amounts of flammable or hazardous materials would cause an increased risk of harm to neighboring property owners in the event of a fire, especially in a building that had failed fire-safety inspections and had not been approved for occupancy for that purpose. Plaintiffs presented evidence that Recycling Revolution was illegally operating a plastics-recycling business in the warehouse, that the fire could have been controlled if these materials had not been stored near the site of the fire's origin, and that the presence of these materials allowed the fire to rapidly and intensely spread throughout the building and prevented firefighters from offensively attacking the fire. Accordingly, the trial court did not err by denying the motion for a directed verdict with regard to the negligence claims against Recycling Revolution.

Defendants also argue that there was insufficient evidence to support plaintiffs' claim for nuisance against Recycling Revolution. They argue that plaintiffs failed to prove a nuisance as

defined in *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 193; 540 NW2d 297 (1995), which states:

An actor is

> subject to liability for private nuisance for a nontrespassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [Quoting *Adkins v Thomas Solvent Co*, 440 Mich 293, 304; 487 NW2d 715 (1992).]

In *Cloverleaf Cab*, 213 Mich App at 191, this Court explained when a defendant may be liable for nuisance:

> In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition. See, e.g., 4 Restatement Torts, 2d, § 834, p 149. A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise. *Gelman Sciences, Inc v Dow Chemical Co*, 202 Mich App 250, 252; 508 NW2d 142 (1993).

Accordingly, a tenant may be liable for a nuisance created on leased property controlled by the tenant.

Defendants argue that the evidence did not show intentional conduct on the part of Recycling Revolution. However, an actor may be liable for nuisance for unintentional conduct under the rules governing liability for negligent, reckless, or ultrahazardous conduct. Although the evidence did not show intentional conduct by Recycling Revolution that started the fire, the unauthorized processing and storage of flammable and hazardous materials at the warehouse, which had failed fire inspections, involved unintentional negligent, reckless, or ultrahazardous conduct sufficient to prove nuisance. As explained earlier, the evidence showed that the fire spread and engulfed the entire building because of the presence of materials, including large amounts of plastic, that caused the fire to accelerate. The court did not err by allowing the nuisance claim to be submitted to the jury where a legal cause of plaintiffs' damages was the uncontrollable fire at the warehouse and Recycling Revolution's recycling and storage of plastic materials in the warehouse, contrary to local ordinances, supported a finding of negligent, reckless, or ultrahazardous conduct.

### III. CLAIMS AGAINST STATEWIDE RECYCLING

The jury found Statewide Recycling liable only for nuisance. Defendants argue that Statewide Recycling could not be liable for nuisance because it was no longer in business at the time of the fire. They also acknowledge that a nuisance can arise from "negligent, reckless, or ultrahazardous conduct," *Cloverleaf Car*, 213 Mich App at 193, but argue that the trial court's dismissal of the negligence and gross negligence claims against Statewide Recycling required dismissal of the nuisance claim as well. We disagree.

Although defendants claim that Statewide Recycling was no longer in operation at the time of the fire, plaintiffs presented evidence that Statewide Recycling continued to use its domain name after defendants claimed that it was no longer operating as a legal entity. More significantly, there was evidence that Statewide Recycling was using the warehouse to store materials and equipment, and that it was continuing to operate within the warehouse, despite that it had legally ceased doing business. The evidence allowed the jury to find that Statewide Recycling's continued operation in violation of regulations and ordinances related to fire safety and prevention, as well as its continued storage of hazardous materials, involved, if not negligent, reckless and hazardous conduct that contributed to the intensity and spread of the fire throughout the entire warehouse, proximately causing plaintiffs' damages. Accordingly, the trial court did not err by allowing the jury to deliberate on the nuisance claim against Statewide Recycling.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Mark T. Boonstra